**Vernon Lee ROSE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–85–01136–CR.**

Court of Appeals of Texas,
Dallas.

Dec. 1, 1986.

Rehearing Denied Jan. 7, 1987.

Kerry P. Fitzgerald, Dallas, for appellant.

John Nation, Dallas, for appellee.

Before the court en banc.

## ON MOTION FOR REHEARING

STEWART, Justice.

Appellant was convicted of aggravated robbery, and the jury assessed punishment at confinement for life in the Texas Department of Corrections. He contends in two points of error that the trial court committed reversible error by: (1) admitting evidence of extraneous offenses occurring at the time of appellant's arrest; and (2) charging the jury on the law of parole pursuant to Code of Criminal Procedure article 37.07, section 4(a), because this instruction violates the separation of powers doctrine and the due process clauses of the State and Federal Constitutions. We disagree with both contentions; accordingly, we affirm.

The sufficiency of the evidence is not disputed. It shows that on the afternoon of October 17, 1984, appellant and two other men entered complainant's textile company in Dallas, robbed him at gunpoint, and left him tied up on the floor. Appellant took complainant's pistol and approximately $160 in cash. Shortly before noon, eight days later, Officer Reno was at an apartment complex in Ennis when he saw a goldish-yellow Pontiac Sunbird that the police were seeking. He observed appellant and his companion, George Fitch, Jr., get out of the car and walk toward the apart-

ments. He approached the two men and asked them to show their identification. As Reno began his questioning, Officer Shoquist arrived and discovered that appellant had a concealed handgun later identified as the pistol stolen in the Dallas robbery. Reno then drew his revolver on Fitch, removed a pistol Fitch was carrying in the waistband of his trousers, and placed Fitch on the ground without handcuffs. Reno then turned to aid Shoquist who was struggling with appellant for the latter's pistol. As appellant and the two officers struggled, Reno lost possession of Fitch's pistol, and Fitch recovered it. Fitch shot and wounded Reno. During the ensuing confusion, appellant escaped in a squad car; he was caught after a high speed chase, which ended when appellant crashed into a concrete median marker.

## I. EXTRANEOUS OFFENSES

Appellant's first point of error complains of the trial court's admission of evidence that he assaulted the police officers at the time of his arrest. He contends that these extraneous offenses are irrelevant to any material issue in the case at bar and also that the inflammatory and prejudicial potential of this evidence clearly outweighs any relevancy value that the evidence may have had. *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983). We disagree. The State is entitled to prove the circumstances surrounding a defendant's arrest, unless such evidence is "inherently prejudicial and has no relevance to any issue in the case." *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App.1985). The issue on appeal is whether the trial judge clearly abused his discretion in admitting the evidence. *Hernandez v. State*, 484 S.W.2d 754 (Tex.Crim.App.1972).

■ Appellant's possession of the stolen pistol at the time of his arrest connects him to the aggravated robbery under prosecution. In addition, evidence of appellant's escape from custody and flight to avoid arrest is admissible to prove his guilt of the offense charged. *Rumbaugh v. State*, 629 S.W.2d 747, 752 (Tex.Crim.App. 1982). We conclude that appellant's as-

sault on the police officers was part and parcel of appellant's flight. Consequently, we hold that the trial court did not abuse its discretion by admitting into evidence proof that appellant assaulted two police officers. We overrule appellant's first ground of error.

## II. CONSTITUTIONALITY OF PAROLE LAW CHARGE

Having overruled appellant's first point of error, we must address the constitutional issue he raises. Appellant contends in his second point of error that Texas Code of Criminal Procedure article 37.07, section 4(a), requiring special jury instructions explaining state parole laws, is unconstitutional because it violates the separation of powers doctrine and the due process clauses of the United States and Texas Constitutions. Appellant also urges that the instructions required by this statute are in irreconcilable conflict with one another.

■ Appellant concedes that he failed to object to the trial court's parole law and good conduct time instructions; consequently, he necessarily contends that giving these instructions to the jury at the punishment phase constitutes fundamental error. Fundamental error in the court's charge is error so egregiously harmful that it deprives defendant of a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (On State's Motion for Rehearing). Because a contention of fundamental error incorporates a defendant's due process rights as guaranteed by article I, section 19, of the Texas Constitution, article 1.04 of the Texas Code of Criminal Procedure, and the Fourteenth Amendment to the United States Constitution, appellant's fundamental error and due process arguments will be treated together.

■ With respect to the separation of powers argument, it is clear that this statute and these instructions potentially offend only the governmental powers of the State of Texas. Therefore, we overrule appellant's contention that the instructions violate the separation of powers doctrine of the United States Constitution.

At the 1985 session of the Texas Legislature, article 37.07, section 4, was enacted, to become effective on September 1, 1985. This provision requires the trial court to submit certain instructions regarding good conduct time and parole eligibility to the jury at the punishment phase of trial. The instructions included in the charge to the jury at punishment in this case read as follows:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant.

You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4(a) (Vernon Supp.1986). Appellant contends that these instructions are unconstitutional because (1) they violate the separation of powers doctrine by (a) authorizing the jury to interfere with the clemency powers of the executive branch of government and (b) authorizing the jury to review the statutory range of punishment and, acting legislatively, to adjust the range in its discretion; and (2) they violate the due process clause because (a) they deny him a fair and impartial trial by jury and (b) they deny him due process of law.

■ In determining the constitutionality of a statute, we begin with the presumption that the statute is constitutional. *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); *Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim. App.1979). Courts should seek an interpretation that supports the constitutionality of legislation. *United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *Faulk v. State,* 608 S.W.2d 625, 630 (Tex.Crim.App. 1980). Before a court can set aside a statute, its validity must clearly be unsupported by a reasonable intendment or allowable presumption. *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim.App.1978). Courts should not assume that the legislature would intend an unreasonable result if the statute is capable of a construction that would prevent such a result. *Wade v. State,* 572 S.W.2d 533, 535 (Tex.Crim.App. 1978). Courts will not declare an act unconstitutional unless it is clearly made to appear in its enactment that the legislature has exceeded its powers. *Lyle v. State,* 80 Tex.Cr. 606, 193 S.W. 680 (1917).

■ With these principles in mind, we address the separation of powers issue under the Texas Constitution. Article II, section 1, of the Texas Constitution provides for the separation of governmental powers among the three distinct departments—the executive, judicial and legislative. It fur-

ther provides that no branch is to exercise any power properly delegated to another branch. *Ex parte Giles*, 502 S.W.2d 774, 780 (Tex.Crim.App.1973). Appellant relies on article IV, section 11, of the Texas Constitution to support his position that parole is a component of the clemency powers vested in the executive branch of government and, therefore, that these instructions constitute an usurpation by the judiciary, acting through the jury, of that executive power. We disagree. The first paragraph of that section gives the *legislature* the power to enact parole laws. Thus the rules governing parole are within the control of the legislature. If the legislature had determined that the parole laws were too lax, it had full power to restructure the eligibility requirements. In fact, it could eliminate parole entirely without infringing upon the executive power. With such broad power, the legislature had no reason to resort to a subterfuge in the form of jury instructions to postpone an inmate's parole.

■ Moreover, the parole laws themselves were not the legislative concern; rather, the legislature sought to address and remedy the problem of jury discussion of the parole laws. The legislative history to article 37.07, section 4(a), provides:

*Background information*

There has been an outcry from public citizens serving as jurors that the sentences that have been handed down have differentiated greatly from the sentences actually served. Jurors have indicated in some instances that they were recommending even longer sentences in order to compensate for the time which would be knocked off the sentence by the combination of good time credit and eligibility for parole.

*Problem(s) that the bill addresses:*

Public citizens serving as jurors from across the State have indicated that they need to be informed that the defendant may, but will not necessarily, be incarcerated for the full length of the sentence imposed; and the guidelines that are used to reduce the sentences through parole and good time credit.

HOUSE COMM. ON JURISPRUDENCE, BILL ANALYSIS, Tex.S.B. 37, 69th Leg. (1985). The instructions mandated by article 37.07, section 4(a), address this problem. Under article IV, section 11, of the Texas Constitution, the legislature has the authority to enact such a statute.

■ Appellant contends that the instruction enables and encourages the jury to apply the parole law in assessing punishment. It has long been held that jury *application* of the parole laws when assessing a defendant's punishment is a violation of the separation of powers doctrine, because the application of the parole law was left exclusively to the executive branch. *Scaling v. State*, 499 S.W.2d 318 (Tex.Crim.App.1973); *Meyers v. State*, 418 S.W.2d 676 (Tex.Crim.App.1967); *Moore v. State*, 171 Tex.Cr.R. 182, 346 S.W.2d 349 (1961). Appellant complains that giving the jury the precise parole formula theoretically provides them the information necessary to calculate and assess a sentence that thwarts the effect of the parole laws. However, in the final analysis, we must read the statute as written. Article 37.07, section 4(a), nowhere permits or encourages juries to apply parole laws in determining punishment. There is no legislative history or other evidence that would justify the conclusion that the legislature did not mean exactly what it said by this statute; indeed the available legislative history mandates a contrary conclusion. This statute must be construed according to the plain meaning of its text. *Joslin v. State*, 722 S.W.2d 725 (Tex.App.—Dallas 1986) (issued of even date with this opinion).

■ These instructions explicitly order the jury not to consider the parole law and good conduct time in assessing punishment for the individual defendant on trial. Appellate courts must presume that the jury follows the trial court instructions. *Ainsworth v. State*, 517 S.W.2d 274, 277 (Tex. Crim.App.1975). Chief Justice Rehnquist of the United States Supreme Court has stated, "The rule—indeed, the premise upon which the system of jury trials func-

tions under the American judicial system— is that juries can be trusted to follow the trial court's instruction." *Parker v. Randolph*, 442 U.S. 62, 75, n. 7, 99 S.Ct. 2132, 2140, n. 7, 60 L.Ed.2d 713 (1979). The Fort Worth Court of Appeals, addressing the validity of this same parole instruction, has said:

> To conclude that jurors will fail to comprehend the court's explanation that eligibility for parole does not guarantee parole and that no accurate prediction can be made as to how good conduct time or parole *may* be applied to a particular defendant is an assumption we are unwilling to make. Further, to conclude that jurors are likely to disregard the court's instruction not to consider the award or forfeiture of good conduct time nor how "the parole law *may be* applied to this particular defendant," would, in our opinion, be an indictment against the integrity of individual jurors and the jury system itself. We refuse to become a party to any such indictment.

*Patton v. State*, 717 S.W.2d 772 (Tex.App. —Fort Worth, 1986) (emphasis original). We approve both observations.

Appellant has not alleged that the jury discussed, much less applied, the parole laws here. Even if he did, it would be the jury's misconduct in failing to obey the instruction, not article 37.07, section 4(a), that would form the basis of such a complaint. Although the violation of a statute may produce an unconstitutional result, that result does not render the statute itself unconstitutional; rather, the constitutionality of the statute and actions taken thereunder must be considered separately. *Duke Power Co. v. Greenwood County*, 91 F.2d 665, 672 (4th Cir.1937).

In addition, appellant contends that the instructions enable the judicial branch to encroach upon the legislative as well as the executive branch by authorizing the jury to adjust the statutory range of punishment. Because the statutory range of punishment for any particular crime is set out explicitly, a sentence greater or less than the statutory range would be readily recognized by the court as error and no

violation of the separation of powers doctrine would occur. Consequently, we assume appellant is contending that a jury, by applying the parole law, eliminates the lower range of punishment—e.g., where the statutory range is ten years to life, the jury adjusts the range to thirty years to life. We are not persuaded. Whether jurors will secretly use the parole law formula in assessing punishment is a matter of pure conjecture. Only if the necessary effect of this instruction is unconstitutional should we rule it unconstitutional. The mere possibility of jury misconduct stemming from an unconstitutional use of the information provided in the charge is not sufficient to render the statute itself unconstitutional. Statutes should be upheld unless clearly unconstitutional, and this Court cannot indulge in conjecture to determine otherwise. *See Judkins v. Robinson*, 109 Tex. 6, 160 S.W. 955 (1913). We hold that the legislature did not exceed its constitutional powers over parole when it enacted article 37.07, section 4(a). We further hold that the instructions do not authorize the judicial branch to usurp or interfere with the exclusive authority to determine parole granted to the Board of Pardons and Paroles by the legislature. TEX.CODE CRIM.PROC.ANN. art. 42.18, sec. 1 (Vernon Supp.1986). Consequently, this statute does not violate the separation of powers doctrine of the state constitution.

Appellant also contends that he was denied a fair and impartial trial because the instructions are self-contradictory and misleading in that they require the jurors to distinguish between the existence of the parole law in general terms and the manner of its application to the case of an individual defendant. There is nothing inherently contradictory or confusing about this distinction or the way it is described in the statute. We must not underestimate the ability of the average juror. The final instruction is no more complex or abstract than other portions of the charge in a criminal case, e.g., the application of the law to the facts. We hold that the required jury instructions present no irreconcilable conflict—they clearly tell the jury "not to con-

sider the manner in which the parole law may be applied to this particular defendant."

■ Appellant also argues that instructions are given to aid the jury in applying the law to the facts, but here there are no admissible facts to which parole law applies. The giving of admonitory instructions by the trial court, in order to discourage jury misconduct, is within the sound discretion of the trial court. *York v. State,* 566 S.W.2d 936 (Tex.Crim.App.1978). Guarding against the jury's consideration of parole falls within this rule. *O'Bryan v. State,* 591 S.W.2d 464 (Tex.Crim.App.1979). Nor does anything in the Texas Constitution, either express or implied, prohibit the legislature from enacting a law requiring a judge to give the jury a particular instruction on parole and good time. In fact, the Texas Code of Criminal Procedure includes other sections that provide for mandatory jury instructions, *e.g.,* TEX.CODE CRIM. PROC.ANN. art. 38.07 (Vernon Supp.1986) (weight to be given evidence in sexual assault cases); TEX.CODE CRIM.PROC. ANN. art. 38.17 (Vernon 1979) (instruction for uncorroborated testimony). *Joslin v. State,* at 733.

■ Experience has shown that although instructed not to discuss or consider the parole laws when assessing punishment, juries have sometimes speculated upon and attempted to apply the parole law in the punishment phase. Judge Clinton of the Texas Court of Criminal Appeals proposed a solution to this problem:

Let us accept that jurors are reasonable and sensible persons who can be trusted to follow their oath and instructions from the trial court *when they are made to understand the reason they are not to discuss parole.*

.... It follows that jurors would be better informed and equipped to remove operation of parole laws from consideration during their deliberations if and when they are given a common sense reason for doing so. And the most practical reason from the perspective of a layman is that *no one in this state can predict when an inmate will be released on parole, or whether one will ever be released on parole at all!*

*Keady v. State,* 687 S.W.2d 757, 762 (Tex. Crim.App.1985) (Clinton, J., dissenting) (emphasis original). The legislature apparently reached the same conclusion as Judge Clinton when it determined that the jury should be given the correct law and should be told why they could not consider it in determining punishment. We hold that aiding the jury in understanding why they are prohibited from considering how the parole law may be applied is a proper subject for the court's instruction. *O'Bryan,* 591 S.W.2d 464; *York,* 566 S.W.2d 936.

Appellant also argues that the trial court committed fundamental error when it submitted the jury instructions of parole under article 37.07, section 4(a), because these instructions were not authorized by the statute. We disagree.

■ The parole instructions given to the jury were based on article 37.07, section 4(a). Appellant claims those instructions are only authorized by the statute "if the offense of which the jury has found the defendant guilty is listed in *Section 3f(a)(1), Article 42.12, of this code* or if the judgment contains an affirmative finding under *Section 3f(a)(2), Article 42.12, of this code....*" TEX.CODE CRIM.PROC. ANN. art. 37.07, § 4(a) (Vernon Supp.1986) (Emphasis added). Appellant argues that since there are no sections such as 3f(a)(1) or 3f(a)(2) of article 42.12, appellant's case could not have come within article 37.07, section 4(a).

This inconsistency in the statute was apparently due to legislative oversight. During the 69th Legislative Session, articles 37.07 and 42.12 were amended by adding section 4 to article 37.07, by adding a new section 3f to article 42.12, and by redesignating the old section 3f as 3g. *See* Act of May 2, 1985, Ch. 427, sections 3f and 3g, 1985 Tex.Sess.Law Serv. 4446–4449 (Vernon). In doing so the legislature apparently neglected to change the cross-reference in article 37.07, section 4, to reflect the recodification of article 42.12. However, it is more than apparent that article 37.07's references to 3f is to the old 3f which is

now 3g. The Texas Government Code requires that we construe the statute reasonably. TEX.GOV'T CODE ANN. sections 311.021 and 311.023 (Vernon Pamphlet 1986).

Sections 311.021 and 311.023 were formerly part of the Code Construction Act. TEX.REV.CIV.STAT.ANN. art. 5429b–2 (Vernon Supp.1986) *repealed by* Acts 1985, 69th leg., p. 3361, ch. 479, sec. 224, eff. Sept. 1, 1985. The Code Construction Act was reenacted in substantially the same form in the Texas Government Code. The Code Construction Act is applicable to each amendment, repeal, revision and reenactment of any provisions of the Code of Criminal Procedure enacted by the 60th or any subsequent legislature. *Barbee v. State*, 432 S.W.2d 78, 82 (Tex.Crim.App. 1968). A construction which would create a needless conflict between separate articles of the Code of Criminal Procedure is to be avoided if at all possible. *Summerford v. State*, 627 S.W.2d 468, 471 (Tex.App.— Houston [1st Dist.] 1981, no writ). To hold that article 37.07, section 4, does not authorize the jury instructions in this case would be an unreasonable construction of the statutue and would create a needless conflict between article 37.07, section 4 and article 42.12 of the Code of Criminal Procedure. We presume the legislature intended a reasonable construction. Appellant's contention is overruled. *Joslin v. State*, at 735–736.

We hold that appellant was not denied a fair and impartial trial or due process of law by the mere submission of these instructions to the jury. Therefore, no error is presented.

The judgment is affirmed.

GUITTARD, C.J., and AKIN, STEPHENS, VANCE, DEVANY and McCLUNG, JJ., join in this opinion.

SCALES, J., concurs in the majority opinion only to the extent that he concurs in the result.

WHITHAM, J., files a dissenting and concurring opinion in which HOWELL, McCRAW, HOLLINGSWORTH and MITCHELL, JJ., join.

McCRAW, J., files a dissenting and concurring opinion.

SCALES, J., files a concurring opinion.

HOWELL, J., files a dissenting opinion.

WHITHAM, Justice, dissenting and concurring.

I concur in part and respectfully dissent in part. I agree with the majority that the trial court did not err in admitting into evidence proof that appellant assaulted two police officers. Therefore, I concur that we overrule appellant's first point of error. I disagree, however, with the majority in its disposition of appellant's second point of error. Thus, I respectfully dissent for the reasons below. Consequently, I would sustain appellant's second point of error and reverse and remand.

In his second point of error, appellant contends that the trial court committed fundamental error during the punishment hearing when it submitted instructions to the jury on the law of parole. Appellant's second point of error involves constitutional issues. It is well settled that the constitutionality of a statute will not be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised. *Smith v. State*, 658 S.W.2d 172, 174 (Tex.Crim.App. 1983). Since I find no merit in appellant's first point of error, I must address the issue of the constitutionality of article 37.-07, § 4 of the Texas Code of Criminal Procedure raised in appellant's second and remaining point of error. Under his second point of error, appellant argues that the instructions given as directed by article 37.07, § 4 violate the separation of powers doctrine contained in both the Constitutions of the United States and of the State of Texas. Appellant also argues that the instructions given deprived appellant of due process of law under both constitutions. Appellant failed to object to the instructions. Thus, appellant asserts fundamental error on appeal. The issue presented involves only governmental powers of the

State of Texas and not of the United States. Consequently, I perceive no issue of separation of powers between the executive branch of the government of the United States and the judicial branch of the government of the United States. Therefore, I conclude that the instructions given as directed by article 37.07, § 4 do not violate the separation of powers doctrine contained in the Constitution of the United States. I conclude, however, for the reasons expressed below, that article 37.07, § 4 violates the separation of powers doctrine provided by article II, § 1 of the Constitution of the State of Texas and, therefore, is unconstitutional. I also conclude for the reasons expressed below that the instructions given deprived appellant of due process under both the Constitutions of the United States and of the State of Texas; and, therefore, is unconstitutional.

### Separation of Powers

At the punishment phase of the trial, the trial court instructed the jury as follows pursuant to article 37.07, § 4:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before

he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant.

You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4 (Vernon Supp.1986). Appellant's basic contention is that these article 37.07, § 4 instructions violate the constitutional doctrine of separation of powers and, therefore, article 37.07, § 4 is unconstitutional. I begin with some background.

### Regulation of Parole

Article IV, § 11 of the Texas Constitution provides that "[t]he Legislature shall by law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its actions. The Legislature shall have authority to enact parole laws." TEX.CONST. art. IV, § 11. The Legislature has enacted rules governing the application of parole laws. Pursuant to article 42.12, § 15(g)(1) of the Texas Code of Criminal Procedure, the Board of Pardons and Paroles is authorized, where not inconsistent with law, to adopt rules with respect to eligibility of prisoners for parole. The Board is designated as "the agency of state government with exclusive authority to determine paroles." TEX.CODE CRIM.PROC.ANN. art. 42.18, § 1 (Vernon Supp.1986). The Legislature has fixed eligibility requirements for parole. Article 42.18, § 8(b) of the Texas Code of Criminal Procedure provides that a prisoner under a death sentence is not eligible for parole. A person

convicted of the class of offenses under article 42.12, § 3g(a)(1) of the Texas Code of Criminal Procedure (aggravated kidnapping, aggravated sexual assault and aggravated robbery) is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or twenty calendar years, whichever is less, but in no event shall he be eligible for release on parole in less than two calendar years. The same provisions apply where the court makes an affirmative finding that a deadly weapon was used or exhibited. All other prisoners are eligible for release on parole when their calendar time served plus good conduct time equals one-third of the maximum sentence imposed or twenty years, whichever is less. TEX.CODE CRIM.PROC.ANN. art. 42.18, § 8(b) (Vernon Supp.1986). The Parole Board is authorized to release on parole any person confined in a penal or correctional institution who is eligible for release under the preceding section. TEX.CODE CRIM. PROC.ANN. art. 42.18, § 8(a) (Vernon Supp.1986).

### Regulation of Good Conduct Time

Pursuant to article 6181–1 of the Texas Revised Civil Statutes, inmates are to be classified by the Texas Department of Corrections into three categories according to such factors as conduct, obedience, industry, and prior criminal history. TEX.REV. CIV.STAT.ANN. art. 6181–1, §§ 2 & 3(a) (Vernon Supp.1986). Inmates earn a specified amount of good conduct time based upon their classification. TEX.REV.CIV. STAT.ANN. art. 6181–1, § 3 (Vernon Supp. 1986). Good conduct time is a privilege and not a right, and these credits may be forfeited by the director of the Texas Department of Corrections if the inmate commits an offense or violates a departmental rule. Good conduct time affects only the prisoner's eligibility for parole or mandatory supervision and does not otherwise operate to reduce the prison term. TEX.REV. CIV.STAT.ANN. art. 6181–1, § 4 (Vernon Supp.1986).

### Separation of Powers

With this background, I reach the separation of powers issue. At the outset, I emphasize what the present case does not involve. The present case does not involve jury misconduct in discussing the parole laws. Therefore, we do not have before us the precise questions ably and forcefully addressed by the majority and dissenting opinions in *Sneed v. State,* 670 S.W.2d 262 (Tex.Crim.App.1984). Instead, we must decide whether, under the Constitution of the State of Texas, the trial court can advise the jury of certain aspects of the parole and good time laws, including time computations for eligibility for parole, then tell the jury that they may consider the *existence* of these aspects of those laws and yet order them not to consider the manner in which the parole law may be *applied* to appellant.

From the Constitution of the State of Texas, we know that the people of Texas have divided the powers of government of the State of Texas into three departments. We know also that these three departments are the legislative, the executive and the judicial and that none of these departments can exercise any power assigned by the constitution to either of the others. As commanded by the people of Texas in article II, § 1 of the Constitution of the State of Texas:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to-wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX.CONST. art. II, § 1. Therefore, in the context of the present case we must determine if this same constitution has "attached" to any of the three departments any power with respect to parole. I find that the constitution does so. As further commanded by the people of Texas in arti-

cle IV, § 11 of the Constitution of the State of Texas:

> The Legislature shall by law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its actions. The Legislature shall have authority to enact parole laws.
>
> In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons; and under such rules as the Legislature may prescribe, and upon the written recommendation and advice of a majority of the Board of Pardons and Paroles, he shall have the power to remit fines and forfeitures. The Governor shall [have] the power to grant one reprieve in any capital case for a period not to exceed thirty (30) days; and he shall have power to revoke conditional pardons. With the advice and consent of the Legislature, he may grant reprieves, commutations of punishment and pardons in cases of treason.

TEX.CONST. art. IV, § 11.

The majority seizes on the language of article IV, § 11 that "[t]he Legislature shall have authority to enact parole laws" as divesting the executive branch of government of any power with respect to parole and vesting that power solely within the province of the legislative branch. To my mind, nothing could be more wrong. The majority errs because it misreads the constitutional history of article IV, § 11 and the decisions of our Court of Criminal Appeals. First, I note some of the history of article IV, § 11. The 1936 amendment of article IV, § 11 added the language "[t]he Legislature ... shall have authority to enact parole laws." TEX.CONST. art. IV, § 11 (1936, amended 1983). That language appeared in a third paragraph of

article IV, § 11. The subsequent 1983 amendment to article IV, § 11 deleted that third paragraph and moved the language "[t]he Legislature shall have authority to enact parole laws" to its present place in article IV, § 11. TEX.CONST. art. IV, § 11. Therefore, the language relied upon by the majority as divesting the executive branch of government of any power with respect to parole and vesting that power solely within the province of the legislative branch has been in our constitution since 1936. Second, with this history in mind, let us turn to what the Court of Criminal Appeals has said about the matter. To my mind, the constitutional directive to the legislature to establish "a Board of Pardons and Paroles" is no more than a commission to place certain executive functions of government in a specialized office within the executive branch of government. Indeed, the Court of Criminal Appeals said just that in 1944, after the 1936 amendment to article IV, § 11. "[The Board of Pardons and Paroles and parole officers] are merely arms of the executive designed to assist him [the governor] in a wiser performance of his duty." *Ex parte Ferdin,* 147 Tex.Cr.R. 590, 183 S.W.2d 466, 467 (1944). Furthermore, in 1975 the Court of Criminal Appeals pointed out that legislative authority to enact parole laws did not deprive the executive branch of government of the exclusive power to make decisions to parole. Consider this language in *Heredia v. State,* 528 S.W.2d 847, 853 (Tex. Crim.App.1975) [1]:

> *The decision to parole,* if and when made, is beyond the province of the courts (except, of course, complaints of denial of constitutional or statutory rights in consideration for parole may be raised by petition of the courts, e.g., by habeas corpus) and therefore of the jury, and *is exclusively a matter within the province of the executive branch of government,* under proper regulation by

---

**1.** We recognize that *Heredia's* test for reversible error in jury misconduct has been questioned, modified and recognized as overruled in various cases (e.g., *Sneed v. State,* 670 S.W.2d 262, 264–66 (Tex.Crim.App.1984). However, *Heredia's* analysis of the constitutional issues involved in a jury's consideration of parole has not been questioned. All citations to *Heredia* in this opinion are from those parts of *Heredia* that the subsequent cases have not questioned.

the legislative branch. Article IV, Section 11, Texas Constitution.

*Heredia,* 528 S.W.2d at 853, n. 4 (emphasis added). Thus, decisions with respect to parole are exclusively a matter within the province of the executive branch of government. Therefore, the majority errs in holding that the present language of article IV, § 11 divests the executive branch of government of any power with respect to parole. The Court of Criminal Appeals has held otherwise. Indeed, the majority's holding that article IV, § 11 divests the executive branch of government of any power with respect to parole and vests that power solely within the province of the legislative branch will come as a surprise to the trial court. Consider, if you will, a specific instruction given in the present case concerning parole. In addition to the instructions provided in article 37.07, § 4, the same charge in the present case later instructed the jury:

> You are further instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. *Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas and are no concern of yours.*

(Emphasis added). I must insist that the majority is wrong in holding that the executive branch is divested of any power with respect to parole by the present language of article IV, § 11.

Moreover, I am not alone in my conclusion that decisions with respect to parole are exclusively a matter within the province of the executive branch of government. In *Williams v. State,* 461 P.2d 997 (Okla.Crim.App.1969), the highest court of Oklahoma with criminal jurisdiction held a statute requiring trial courts to instruct the jury on parole law to be unconstitutional under the separation of powers provision of the Constitution of the State of Oklahoma. In the language of the Oklahoma court:

> The State of Oklahoma, by and through its Attorney General, has filed a Petition

for Rehearing in the above styled and numbered cause on the grounds that this Court, in its opinion, failed to pass on the constitutionality of 57 O.S.Supp.1969, § 138. In this contention the Attorney General is correct, and to make it crystal clear that an instruction should not be given under the provisions of 57 O.S. Supp.1969, § 138, nor should the District Attorney argue it as a part of his closing remarks to the jury, we specifically hold that the provisions of the statute making it mandatory for the court to give such an instruction is in violation of Article 4, Section 1, of the Constitution of the State of Oklahoma, the some [sic] providing: "The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

*Williams,* 461 P.2d at 1001. Consider also, albeit dicta, the concern of the court in *United States v. Scott,* 793 F.2d 117 (5th Cir.1986) as to separation of powers in the federal system. "We have grave doubts whether the grant of judicial power in Article III of the Constitution extends to the relief granted by the district court in this case: Article II of the Constitution confers upon the President—the holder of executive power in our constitutional scheme— the power to grant reprieves and pardons for offenses against the United States." *Scott,* 793 F.2d at 118.

Indeed, in the present case the State appears to concede that decisions with respect to parole are exclusively a matter within the province of the executive branch of government. The State, however, insists that no separation of powers problem exists. First, the State argues that to allow jurors to consider the *existence* of parole and good conduct presents no constitutional problem because the existence of these factors is common knowledge among jurors. I disagree. I am unwilling to hold that asserted "common knowledge" of citi-

zens, including jurors, rewrites constitutional provisions. I decline to accept the premise that the Constitution of the State of Texas is subject to daily amendment by force of the perceived "common knowledge" of the moment. It is precisely that manner of government that the Constitutions of the United States and of the State of Texas are designed to protect against. Second, the State insists that no separation of powers problem exists because article 37.07, § 4 does not allow the jurors to consider *application* of parole and good conduct laws, and that, indeed, the statute requires instructions to that effect. I disagree. I conclude that article 37.07, § 4 is an attempt to allow the judicial branch of government to exercise a power exclusively within the province of the executive branch of government. I conclude that article 37.-07, § 4, in the last analysis, is no more than an artfully drafted subterfuge to permit the judicial branch of government, acting by the trial court via instructions to the jury, to authorize the jury to attempt to *apply* the parole laws in assessing punishment. I reach this conclusion, in part, because of the State's first argument. If the *existence* of the parole law is a matter of "common knowledge" among jurors, I fail to see the need to instruct them as to what they already know. Thus, there must be some other reason for the instructions. I conclude that this other reason is to permit the judicial branch, through jurors, to exercise executive powers with respect to parole. I reach this conclusion because the instructions directed by article 37.07, § 4 go beyond the explanation suggested by Judge Clinton in *Keady v. State*, 687 S.W.2d 757, 762 (Tex.Crim.App.1985) (Clinton, J., dissenting). Thus, for example, I conclude that the instructions directed by article 37.07, § 4 and given in the present case, exceed constitutionally permissible limits when they provide:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, without consideration of any good conduct time

he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

Article 37.07, § 4. With this information article 37.07, § 4 allows the jury, in the words of Judge Davidson, to engage in action:

> [S]usceptible of but one construction, that being ... a revolt by the jury against the commutation and good-behavior laws of this state and a denial to this appellant of the rights given him by those laws.

*Salcido v. State*, 167 Tex.Cr.R. 173, 319 S.W.2d 329, 334 (1959) (Davidson, J., dissenting). I conclude that the immediately above-quoted instruction directed by article 37.07, § 4 permits the jury to calculate and assess a sentence that thwarts the parole laws and the executive department's powers as to parole laws. I reach this conclusion because jurors, individually and silently in their own minds, without discussion among themselves, can calculate a sentence that thwarts the parole laws and executive powers as to parole laws and then vote to assess a sentence designed to accomplish that objective. All without one word of discussion between members of the jury. Thus, jury misconduct would never surface. In short, I can only conclude that the article 37.07, § 4 instructions are not intended to be helpful informational services to jurors. Instead, I can only conclude that the article 37.07, § 4 instructions are intended and designed to be a skillful scheme to thwart the powers of the executive branch of government and to deny rights given an accused under the law.

Furthermore, for reasons that follow, I cannot agree that the final directed instruction of article 37.07, § 4 saves the statute. That final instruction reads:

> You may consider the *existence* of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the

manner in which the parole law may be *applied* to the particular defendant. (Emphasis added). I am at a loss to understand how jurors are expected to distinguish between considering the *existence* of the parole law and the manner of *application* of the parole law. For the reasons I discuss below concerning a fair and impartial trial, I conclude that to instruct jurors to distinguish between *existence* of the parole law and *application* of the parole law creates an irreconcilable conflict and that this irreconcilable conflict misleads jurors as a matter of law. Indeed, the fact that the instructions so mislead the jurors illustrates the evil inherent in attempting to devise a scheme accomodating public outcry against the parole laws of this State. I cannot accept fiction and subterfuge to circumvent the Constitution of the State of Texas as it requires separation of powers. Consequently, I would hold that article 37.-07, § 4 violates the separation of powers doctrine found in article II, § 1 of the Constitution of the State of Texas. Thus, I conclude that the trial court erred in the charge on the parole law.

### Substantive Due Process—A Fair and Impartial Trial

Certainly one of the basic purposes of the Due Process Clause has always been to protect a person against having the Government impose burdens upon him except in accordance with the valid laws of the land. *Implicit in this constitutional safeguard is the premise that the law must be one that carries an understandable meaning with legal standards that the courts must enforce.* Giaccio v. Pennsylvania, 382 U.S. 399, 403, 86 S.Ct. 518, 521, 15 L.Ed.2d 447 (1966) (emphasis added).

The majority treats appellant's contention that he was deprived of due process under the fourteenth amendment to the Constitution of the United States, under article I, § 19 of the Texas Constitution, and under article 1.04 of the Texas Code of Criminal Procedure as a complaint that he was denied a fair and impartial trial at the punishment phase of the trial. I agree with the majority's reading of appellant's argument. The majority then describes appellant as asserting that he was denied a

fair and impartial trial because the instructions are self-contradictory and misleading. I agree in substance with the majority's reading of appellant's argument. As does the majority, I will address appellant's due process arguments within the concept of a fair and impartial trial. Before proceeding, however, I remind the reader that in the present case the trial court gave further instructions on the parole law than those directed by article 37.07, § 4. In addition to the instructions provided in article 37.07, § 4, the same charge later instructed the jury:

> You are further instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. *Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas and are no concern of yours.*

(Emphasis added).

Article 36.14 of the Texas Code of Criminal Procedure requires the trial court in the present case to deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX.CODE CRIM. PROC.ANN. art. 36.14 (Vernon 1981). Nevertheless, whenever it appears by the record in any criminal action upon appeal that any requirement of article 36.14 has been disregarded, the judgment shall not be reversed unless it appears from the record that the defendant has not had a fair and impartial trial. TEX.CODE CRIM. PROC.ANN. art. 36.19 (Vernon 1981). For the reasons that follow, I conclude that the trial court failed to deliver to the jury a written charge distinctly setting forth the law applicable to the case. Moreover, for the reasons that follow, I conclude further that it appears from the record that appellant has not had a fair and impartial trial.

The instructions that are eventually delivered to the jury should be clear, succinct, unambiguous and free from internal contradictions. *Perkins v. State,* 117 Tex. Cr.R. 415, 37 S.W.2d 163, 164 (1931); *McElwee v. State,* 73 Tex.Cr.R. 445, 165 S.W.

927, 928–29 (1914); *Bennett v. State*, 75 S.W. 314, 316–17 (Tex.Cr.App.1903); *Henry v. State*, 54 S.W. 592, 594 (Tex.Cr. App.1899); *Criner v. State*, 41 Tex.Cr.R. 290, 53 S.W. 873, 874 (1899); *Green v. State*, 32 Tex.Cr.R. 298, 22 S.W. 1094, 1095–96 (1893); *Johnson v. State*, 21 Tex. App. 368, 17 S.W. 252, 253 (1886). I read appellant to argue that the instructions given on the parole law are confusing and internally contradictory. In the present case, the trial court told the jury that they may consider the *existence* of the parole law, told the jury that they may not consider the manner of *application* of the parole law and told the jury that the parole law is no *concern* of theirs. Trial courts should avoid venturing out into broad fields of lectures to juries upon their duties other than upon necessary topics. *Pugh v. State*, 131 Tex.Cr.R. 169, 97 S.W.2d 200, 201 (1936). It is not the function of the charge merely to avoid misleading or confusing the jury. It is the function of the charge to lead and prevent confusion. *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim.App.1977). I fail to see how jurors may consider the *existence* of the parole law when told that the parole law is not their *concern*. Furthermore, I am at a loss to understand how jurors are expected to distinguish between considering the *existence* of the parole law and the manner of *application* of the parole law. I recognize that appellate courts must presume that the jury followed the trial court's instructions. *Ainsworth v. State*, 517 S.W.2d 274, 277 (Tex.Crim.App.1975). Nevertheless, the presence of a correct instruction does not cure the error of giving another inconsistent one. *Lowry v. State*, 671 S.W.2d 601, 603 (Tex.App.—Dallas 1984), *rev'd on other grounds*, 692 S.W.2d 86 (Tex.Crim. App.1985). Each instruction must be judged in the context of the entire charge. *Lowry*, 671 S.W.2d at 603. It is fundamental to our jurisprudence that instructions to the jury must be consistent with each other, and not misleading to the jurors. *Lowry*, 671 S.W.2d at 603.

I conclude that to instruct jurors that they may consider the *existence* of the parole law and thereafter instruct jurors that the parole law is not their *concern*, creates an irreconcilable conflict and that this irreconcilable conflict misleads jurors as a matter of law. Moreover, I conclude that to instruct jurors to distinguish between the *existence* of the parole law and the *application* of the parole law also creates an irreconcilable conflict and that this irreconcilable conflict misleads jurors as a matter of law. Consequently, I agree with appellant that the instructions given on the parole law are confusing and internally contradictory. Therefore, I conclude that the trial court's charge on the parole law denied appellant a fair and impartial trial on the punishment issues in violation of article 36.19. I conclude further that, for the reasons expressed above, appellant was deprived of due process under the fourteenth amendment to the Constitution of the United States, under article I, § 19 of the Texas Constitution and under article 1.04 of the Texas Code of Criminal Procedure in that the trial court's charge denied appellant a fair and impartial trial on the punishment issues. Thus, I conclude further that the trial court erred in its charge on the parole law.

*Disposition*

Finding trial court error, I reach the question of whether the error constitutes reversible error. I recognize that *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1985) instructs that whether objection to the charge was made or fundamental error claimed "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. Appellant did not object to the charge on any grounds. Thus, appellant asserts fundamental error. Fundamental error is error so egregious and creates such harm that an accused has not had a fair and impartial trial—in short "egregious harm." *Almanza*, 686 S.W.2d at 171. Thus, we have two basic questions. First, whether anything conspicuously bad happened to appellant because the trial

court charged the jury as directed by law as enacted by the legislature in article 37.07, § 4. Second, whether anything conspicuously bad happened to appellant because the trial court submitted to the jury a confusing and internally contradictory charge. *See White v. State,* 699 S.W.2d 607, 617 (Tex.App.—Dallas 1985, no pet.).

Assaying the actual degree of harm in light of the entire jury charge alone, I conclude that the actual degree of harm to appellant requires that we reverse the trial court's judgment. In addressing the first basic question, I consider the consequences that must follow the effort to circumvent the separation of powers doctrine contained in the Constitution of the State of Texas. It is well established that under article II, § 1 of the Constitution of the State of Texas power which has been granted to one department of government may be exercised only by that branch to the exclusion of the others, and any attempt by one department of government to interfere with the powers of another is null and void. *Munroe v. State,* 637 S.W.2d 475, 477 (Tex. Crim.App.1982).[2] Clemency powers embodied in the parole system are beyond the reach of interference by the judicial branch and any action by the judicial branch to frustrate or delay the exercise of the power by the executive branch is as much of an unconstitutional interference as is an attempted usurpation of that power. This is the constitutional basis for the established rule that discussion of the parole law is always jury misconduct. *Munroe,* 637 S.W.2d at 477. *Munroe* teaches that any attempt by one department of government to interfere with the powers of another is null and void. *Munroe,* 637 S.W.2d at 477. Having concluded that the trial court's instructions in the present case given pursuant to article 37.07, § 4 constitute an unconstitutional interference with the exercise of a power exclusively within the province of the executive branch of government, I conclude that the trial court's instructions at the punishment phase of trial in the present case directed by article 37.07, § 4 are null and void in that the trial court was prohibited by article II, § 1 of the Constitution of the State of Texas from giving the instructions directed in article 37.07, § 4. I would hold that an accused may not be assessed punishment by a criminal procedure which is null and void in part. To hold otherwise renders meaningless the concept of null and void. To my mind, something conspicuously bad happened to appellant because the trial court charged the jury as directed by law as enacted by the legislature in article 37.07, § 4. I reach this conclusion because appellant has been assessed punishment at life in the Department of Corrections by a criminal procedure which is null and void in part. Therefore, appellant has not had a fair and impartial trial. Thus, I would hold that egregious harm mandating reversal exists as a matter of law because the trial court instructed the jury in accordance with article 37.07, § 4 in violation of the separation of powers doctrine contained in article II, § 1 of the Constitution of the State of Texas. Furthermore, I cannot say beyond a reasonable doubt that the trial court error made no contribution to the punishment. TEX.R. APP.PROC., R. 81(b)(2). Thus, I would reverse the trial court's judgment, because the trial court instructed the jury in accordance with article 37.07, § 4 in violation of the separation of powers doctrine contained in article II, § 1 of the Constitution of the State of Texas. TEX.R.APP.PROC., R. 81(b)(2).

In addressing the second basic question, I consider the consequences that must follow the confusing and internally contradictory charge on the parole law. Assaying the actual degree of harm in light of the entire jury charge alone, I conclude that the actual degree of harm to appellant

---

**2.** We recognize that *Munroe's* test for reversible error in jury misconduct has been questioned, modified; and recognized as overruled in various cases (e.g. *Dugard v. State,* 688 S.W.2d 524, 531 (Tex.Crim.App.1985)). However, *Munroe's* analysis of the constitutional issues involved in a jury's consideration of parole has not been questioned in any of these cases. All citations to *Munroe* in this opinion are from those parts of *Munroe* that the subsequent cases have not questioned.

requires that we reverse the trial court's judgment. I reach this conclusion because a confusing and internally contradictory charge on the parole law which misleads the jury as a matter of law constitutes that actual degree of harm to appellant which requires reversal. I reason that the law must not allow incarceration of an accused in the Texas Department of Corrections as the result of confusion and contradiction in the charge presented to the accused's peers sitting in judgment as to punishment. I conclude that when the State imposes punishment resulting from such confusion and contradiction something conspicuously bad happens to an accused. Therefore, I conclude that egregious harm mandating reversal exists as a matter of law. Consequently, I conclude further that the trial court committed fundamental error during the punishment hearing when it submitted the complained of instructions to the jury on the law of parole. Furthermore, I cannot say beyond a reasonable doubt that the trial court error made no contribution to the punishment. TEX.R.APP.PROC., R. 81(b)(2). Thus, I would reverse the trial court's judgment because the trial court submitted a confusing and internally contradictory charge on the parole law and, therefore, denied appellant a fair and impartial trial. TEX.R.APP.PROC., R. 81(b)(2).

For the reasons expressed, I would reverse the judgment of the trial court and remand the case to the trial court for a new trial.

HOWELL, McCRAW, HOLLINGSWORTH and MITCHELL, JJ., join in this opinion.

SCALES, Justice, concurring.

For the reasons expressed in Justice Whitham and Justice McCraw's opinions, I would hold that article 37.07(4) of the Texas Code of Criminal Procedure is unconstitutional because it violates the separation of powers provision of the Texas constitution and the due process clause of both the Texas and the Federal constitutions. Consequently, the trial court erred in charging the jury pursuant to article 37.07(4). How-

ever, appellant has not demonstrated that the court's charge has caused him to suffer *actual* egregious harm. Therefore, I agree with the majority that appellant's conviction should be affirmed.

In *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984), the Court of Criminal Appeals stated:

We hold that finding error in the court's charge to the jury begins—not ends—the inquiry; the next step is to make an evidentiary review along the lines of that described above in *Davis*, supra, as well as a review of any other part of the record as a whole which may illuminate the *actual, not just theoretical*, harm to the accused.

\* \* \* \* \* \*

To the extent that it holds any charge error requires "automatic" reversal, *Cumbie v. State*, 578 S.W.2d 732 (Tex.Cr. App.1979) is overruled, as are all other opinions inconsistent herewith.

*Almanza*, 686 S.W.2d at 174 (emphasis added). The court held that where there is no objection to the charge submitted to the jury, the appellant must show that he suffered *egregious* harm to obtain a reversal. *Id.* at 171. Consequently, because appellant did not object to the jury charge given in the present case, the trial court's charge does not constitute reversible error unless appellant can show that the charge caused him to suffer actual and egregious harm.

There is no evidence before us that the jury applied the parole information contained in the court's charge in assessing appellant's punishment. In light of *Almanza*, I will not speculate as to the actual effect, if any, that the parole information contained in the court's charge had on the jury's assessment of punishment against appellant. *See Almanza*, 686 S.W.2d at 174 (harm resulting from jury charge error must be actual and *not* just *theoretical*) (emphasis added). Rather, I would hold that appellant must affirmatively demonstrate, in the record, that the parole information actually affected the jury's assessment of punishment against him. *See Lawrence v. State*, 700 S.W.2d 208, 212 (Tex.Crim.App.1985) ("[b]y failing to object

in the instant case, the *appellant is charged with showing* actual egregious harm" under *Almanza* ) (emphasis added); *see also* TEX.CRIM.PROC.CODE ANN. art. 36.19 (Vernon 1981) (error not reversible unless it is apparent from the record that defendant has not had a fair and impartial trial). The appellant could have met the burden by showing that one or more jurors voted for a harsher punishment as a result of the parole information made available to the jury by the trial court's charge. *Cf.* TEX.CRIM.PROC.CODE ANN. art. 40.-03(8) (Vernon 1979) (jury misconduct may be proved by voluntary affidavits of jurors); *Munroe v. State*, 637 S.W.2d 475, 478 (Tex.Crim.App.1982) (jury misconduct can be proved by showing that a single juror voted for harsher punishment because of the misconduct). Because there is no evidence of the jury's actual use, if any, of the parole information conveyed by the trial court's charge, I would hold that appellant has not met his burden of showing that he has suffered actual egregious harm. Accordingly, I would affirm appellant's conviction because no reversible error is shown by the record.

McCRAW, Justice, dissenting and concurring.

I join in Justice Whitham's dissenting and concurring opinion. I, too, would hold that the mandatory jury instructions required by Tex.Code Crim.Proc.Ann. art. 37.07, § 4 (Vernon Supp.1986) violate the separation of powers provision of the Texas constitution. However, I would hold that this statute is unconstitutional since it allows an encroachment by the legislature upon the judicial powers of the State. Further, I would hold that this statute deprived appellant of due process under the constitutions of the United States and of this State because it allowed the jury's punishment-hearing verdict to be predicated on something other than evidence presented in open court.

### I. *Separation of Powers*

A constitutional problem arises when the State executive or legislative branches interfere in a field that is constitutionally committed to the control of the courts. TEX.CONST. art. 2, § 1; *State Board of Insurance v. Betts*, 158 Tex. 83, 308 S.W.2d 846, 851–52 (1958). The Texas constitution vests the judicial power of the State in the courts. TEX.CONST. art. 5, § 1. "Judicial power" as envisioned by the constitution embraces the power to hear facts, the power to decide the issues of fact made by the pleadings, the power to decide the questions of law involved, the power to enter a judgment on the facts found by the jury in accordance with the law as determined by the court, and the power to execute the judgment or sentence. *Kelley v. State*, 676 S.W.2d 104, 107 (Tex.Crim.App. 1984) (quoting *Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641, 645 (1933)).

It is mandatory under article 37.07, § 4, that the courts instruct the jury on the law concerning parole and good time credits, including the mathematical formula to calculate the law's effect. However, the statute "does not permit the introduction of *evidence on the operation of parole and good conduct time laws.*" Art. 37.07, § 4(d) (emphasis added). I would hold that article 37.07, § 4 constitutes an unconstitutional encroachment by the legislature upon the judicial powers of the State. *See Williams v. State*, 461 P.2d 997, 1001–02 (Okla.Crim.App.1969) (holding statute similar to art. 37.07, § 4 unconstitutional because it violates separation of powers provision virtually identical to the Texas constitution's separation of powers provision).

### II. *Due Process*

A fundamental principle of due process requires that a jury's verdict be based on evidence received in open court. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961); *U.S. v. Davis*, 583 F.2d 190, 197 (5th Cir.1978). Although article 37.07, § 4(d) allows jury instructions on the operation of the parole law, it prohibits the introduction of evidence on this matter. Deciding the facts is the jury's province, and the jury system is founded upon the notion that juries decide facts in accordance with evidence, *Cameron v. Hauck*, 383 F.2d 966, 973 (5th Cir.1967),

*cert. denied,* 389 U.S. 1039, 88 S.Ct. 777, 19 L.Ed.2d 828 (1968), and in accordance with the rules of law as stated in the instructions of the court. *Pope v. U.S.,* 298 F.2d 507, 508 (5th Cir.1962).

This statutory instruction scheme created by the Texas legislature requires the courts to charge on good time and the parole law, allows jury consideration during deliberation, while statutorily prohibiting the defendant from introducing evidence on the operations of these laws. Such a statute allows a jury verdict to be based upon mandated law rather than upon evidence presented. I would hold that this is an unconstitutional infringement upon the appellant's due process rights and precludes a fair and impartial trial.

Since appellant's punishment was assessed by a procedure authorized by an unconstitutional statute, I would reverse this case and remand for new trial.

HOWELL, Justice, dissenting.

The heart of the constitutional infirmity in the statute under attack, TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4 (Vernon Supp.1986), is that it has, without rational basis, ordained that every criminal jury to sit in judgment upon a fellow human be provided with the precise tools that are needed to offset the clemency laws.

If there were a legitimate need for jurors to have these tools in hand, the statute might survive the challenge leveled at it by this appellant and by others similarly situated. However, the statute on its face admits the lack of any legitimate need to arm a criminal jury with this information for the statute itself requires a trial court, after charging a jury upon the provisions of the clemency laws, to further charge the jury, in effect: "Now that you have been advised of the particulars of the clemency laws, disregard them."

The incongruity astounds. How can a statute possess social utility when it mandates the giving of a charge which must be disregarded? The offending statute contains a built-in legislative admission that the very information which it requires to be delivered to every criminal jury is wholly

unnecessary to enable that jury to carry out its constitutional function.

The legislative admission of irrelevance is reinforced by the legislative history quoted by the majority (slip op. at 11). Was the statute really adopted to quell "outcry from public citizens serving as jurors"? Public outcry is the law of the lynch mob. Constitutional law is the bulwark that substitutes due process for public outcry.

Of course, if the underlying concern of jurors and citizens, as expressed (i.e., that prisoners are not serving a sufficient part of the sentences imposed) has validity, the Legislature has ample power under the Constitution to address that evil. Reduce good time credits! Those credits are fixed by statute and they may be enlarged or reduced, almost without limit, by the very body politic which promulgated them. Likewise, with parole eligiblity minimums. If they are too low, increase them!!

Assume that the problem really exists and that prisoners are not serving a sufficient part of their sentences. Assume that the majority is correct in its child-like declaration of faith in the proposition that every jury will inevitably perform exactly as instructed. It follows that the Legislature has addressed the problem in a wholly irrational manner because it has decreed that juries be instructed to disregard the problem; and, assuming fidelity to those instructions, the problem has been left wholly unresolved. The Legislature has heeded the clamor of the mob; it has cast an ineffectual placebo into the public arena; it has quelled the outcry but avoided an effective solution; it has committed legislative cowardice.

Assume on the other hand that Justice Witham is correct in his dissenting proposition that juries are composed of fallible humans, that the statute contains an insidious invitation to offset the clemency laws, and that certain juries and certain jurors will heed that invitation and mete out increased sentences; the inevitable result is that those defendants tried before juries who are mindful of their instructions will escape proper punishment. Only those

851

who are punished by juries that refuse to heed the instruction to disregard the mandatory charge upon the clemency laws will receive an adequate sentence.

Another hypothesis predicates that the existing statutory scheme of clemency laws is just and the administration thereof by the Board of Pardons and Paroles has been proper. As a matter of fact, there is a strong presumption to this effect until the contrary be shown. In such instance, the parole instruction statute here under challenge possesses the clear tendency to visit excessive punishment upon the accused wherever the admonition to disregard is not heeded. Under any hypothesis, the irrationality of the statute cannot be escaped.

Of course, the Legislature has the power to adopt clemency laws and to regulate the actions of the Board of Pardons and Paroles. However, the power to regulate does not encompass the power to abolish because that agency is a creature of the Constitution. Likewise, within limits the legislative power exists to regulate the courts and to fix the attributes of a criminal trial. However, in this entire area of regulation, the Legislature may not act in an arbitrary or irrational manner because it is creating restrictions upon the most basic of all freedoms—human liberty.

One power which the Legislature may not deny to the Board is the power to exercise its discretion—to apply the law to the facts of a specific case. Assume that the Board, in the exercise of its discretion, denies parole to a prisoner of some notoriety. May the Legislature thereafter adopt a statute declaring that John Henry Jones is hereby placed upon parole? Would the statute not be a gross invasion of the separation of powers—a direct usurpation of the Board's most fundamental function, the exercise of discretion, the application of the law to the specific case?

That which may not be done directly may not be done indirectly. The statute under attack contains a legislative decree that juries shall be provided with tools that are specifically designed to invade the discretion of the Board. The fact that juries are to be admonished not to use those tools does not obscure the fact that the tools are being furnished. The opportunity and the means to offset the clemency laws is being placed before every criminal jury in this state. It matters little whether or not the overwhelming majority of jurors will resist the obvious temptation to add a little extra to the sentence "to make sure that the defendant doesn't get out too soon." The mischievous element of the statute—temptation—still persists. The mere fact that juries are being equipped with tools adequate to interfere with the discretion of the Board, coupled with the ever-present element of human temptation, particularly in view of the fact that juries have no significant need for such tools, constitutes a direct invasion of the constitutionally separate powers of the Board of Pardons and Paroles.

I dissent for the reasons expressed in the opinion of Justice Whitham and for the further reasons expressed herein. The statute must fall. The case must be reversed and remanded for new trial.