Charles Gregory
RICHARDSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–86–00279–CR.

Court of Appeals of Texas,
Dallas.

April 21, 1987.

Kerry P. Fitzgerald, Dallas, for appellant.

Kathi Alyce Drew, Dallas, for appellee.

Before STEPHENS, HECHT and THOMAS, JJ.

THOMAS, Justice.

Charles Richardson appeals his conviction of aggravated robbery for which the jury assessed punishment at sixty years confinement. Appellant urges eight points of error asserting that the court erred in charging the jury on parole and good time law, that the court erred in refusing to exclude an in-court identification, that the prosecutor engaged in improper jury argument, and that the prosecutor's elicitation of a prejudicial statement surrounding the arrest constituted reversible error. We disagree with all contentions and, accordingly, affirm.

Sae Kim (Kim) owns "Sae's Food Store" and on the morning of August 15, 1985, Kim was robbed by a man who stepped in front of him with a gun. Appellant was charged with the offense of aggravated robbery after being identified by Kim.

The first four points of error contend that the trial court erred in submitting instructions on the law of parole in that: (1) the instructions violated the separation of powers doctrine of the Texas Constitution; (2) the said instructions violated the due process of law requirements of the Texas and Federal Constitutions; (3) the said instructions were not based on any evidence before the jury; and (4) the said instructions were not authorized by law. All of these contentions raised by Appellant have been decided adversely to him by this Court. See *Rose v. State*, 724 S.W.2d 832 (Tex.App.—Dallas, 1986, pet. granted); and *Joslin v. State*, 722 S.W.2d 725, 730–736 (Tex.App.—Dallas 1986, pet. filed). For the reasons stated in *Rose* and *Joslin*, points of error numbers one through four are overruled.

In point of error number five, it is asserted that the trial court committed reversible error in refusing to exclude the in-court identification of Kim since this testimony was tainted by an impermissible, suggestive pre-trial photographic showup which gave rise to a substantial likelihood of irreparable misidentification. We disagree.

On the day following the robbery, a bank employee showed Kim a single photograph of Appellant and asked whether Appellant was the person who had robbed Kim. Two days following the robbery, Kim went to the police station and was shown six photographs, from which he identified Appellant's photograph. Five months after the robbery, Kim attended a live lineup and again identified Appellant as the person who robbed him. Appellant contends that the display of the single photograph by the bank employee was so impermissibly suggestive that it caused a substantial likelihood that the in-court identification was irreparably mistaken.

■ The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been condemned. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). However, whether or not a showup is unnecessarily suggestive and conducive to irreparable mistaken identification depends upon the totality of the circumstances surrounding it. *Stovall, supra.; Garcia v. State*, 626 S.W.2d 46, 54 (Tex.Crim.App.1981). Even an unnecessarily suggestive showup does not automatically require exclusion of evidence since the admissibility of identification testimony is determined by its reliability. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Garcia, supra*. Each case must be considered on its own facts to determine the likelihood that a particular showup resulted in irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 385, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1977); *Garcia, supra*.

■ The factors to be evaluated in determining whether an identification procedure caused irreparable misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness in making the identification; and (5) the length of time between the crime and the identification. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct.

375, 382, 34 L.Ed.2d 401 (1972); *Jackson v. State,* 657 S.W.2d 123, 127 (Tex.Crim.App. 1983).

Prior to trial, the trial judge held an identification hearing outside the presence and hearing of the jury. At this hearing, Kim testified that he was robbed by a man who stepped in front of him with a gun. Kim further testified that it was a bright clear day, and, as the man was close enough to touch, he got a good look at the man. Kim further identified the robber, who wore no disguise, as having a moustache, and as being somewhere in the area of 5′9″–5′11″ in height and weighing approximately 170–190 pounds; he accurately related other physical characteristics. In positively identifying Appellant as the robber, Kim reiterated that his identification was based upon seeing Appellant at the time of the robbery.

■ In comparing the testimony with the factors which are to be considered, the record reveals that Kim had ample opportunity to view the robber at the time of the crime, since this occurred during the morning on a bright, clear day. Appellant argues that inasmuch as the robbery lasted only a minute or less, Kim could not have had adequate time to view his assailant. Where the witness has a "real good look", though fleeting, the in-court identification is admissible. *Coleman v. Alabama,* 399 U.S. 1, 4, 90 S.Ct. 1999, 2000, 26 L.Ed.2d 387 (1970). Kim's degree of attention is supported by the fact that he described the type of pistol used by the robber and gave a description of the physical characteristics as well as the clothing of his assailant. There is nothing in the record which challenges the accuracy of Kim's pre-identification description of the robber. Two days following the crime, Kim picked Appellant's photograph from a photographic array of persons with similar height and build. Approximately five months later, Kim again picked Appellant out of a live lineup of similar persons. There is no claim that either of these latter procedures was suggestive.

■ In determining the reliability of the witness' identification, we consider the evidence in the light most favorable to the jury's verdict. *Thomas v. State,* 605 S.W.2d 290, 292 (Tex.Crim.App.1980). Considered in this light, we hold that the evidence sufficiently supported the reliability of Kim's identification and failed to show that the viewing of the photograph presented by the bank employee caused an irreparable misidentification. Further, since the record reveals that Kim's ability to make the in-court identification had an origin independent of any improper pretrial identification, the in-court identification was admissible at trial. *Thomas v. State, supra.* Appellant's point of error five is overruled.

In points of error numbers six and seven, Appellant complains that certain statements by the prosecutor during jury argument at the guilt or innocence phase of the trial argued matters not in evidence, and implied that the jury should convict based upon further prejudicial evidence which would be introduced during the punishment phase of the trial. We hold that Appellant failed to preserve the alleged error for review.

During the final argument at the guilt or innocence stage of the trial, the following exchange occurred:

(BY MR. HAGOOD): Folks, I'm going to ask you to return a verdict of guilty against Mr. Richardson because he is guilty. I mean, he robbed Mr. Kim. He is as guilty as any man you'll see in the Courtroom.

It's a simple case, folks, but don't kid yourselves. It's an important case. I ask you to return a verdict of guilty in this case against Mr. Richardson, just exactly as he is charged in the indictment and let's get on to the more important part of this trial—

MR PARKER: Your honor, objection to the more important part of this trial. The more important part of any trial is guilt or innocence.

THE COURT: Ladies and gentlemen, I'm going to ask you to take the Court's charge, retire to the jury room and elect one of your members as foreman. Deliberate your verdict. When you have

reached a verdict, knock on the door and the Court will receive it.

Sheriff, retire the Jury.

■ Appellant's counsel failed to preserve error, if any, for review in that he failed to obtain a ruling from the trial court. An objection to jury argument must be pressed to the point of procuring a ruling or the objection is waived. *Carter v. State*, 614 S.W.2d 821, 823 (Tex.Crim. App.1981); and *Johnson v. State*, 604 S.W.2d 128, 132 (Tex.Crim.App.1980). Appellant's points of error numbers six and seven are overruled.

■ In the eight point of error, Appellant contends that the following colloquy between State's counsel and a police investigator constituted reversible error:

Q. And do you know the date Mr. Richardson was arrested?

A. As I recall it was August the 18th of 1985.

Q. Do you know where he was arrested?

A. Yes, I do.

Q. Where was that, sir?

A. At the Lynn Hotel Halfway House—

[Defense Counsel]: Objection, your honor. Objection.

THE COURT: Sustained.

[Defense Counsel]: Move for an instruction to disregard.

THE COURT: Ladies and gentlemen, disregard the last answer.

[Defense Counsel]: Move for a mistrial.

THE COURT: That is denied.

Appellant contends that this testimony introduced improper evidence of his prior criminal record and deprived him of due process. While we agree that the testimony was inadmissible, and the action of the prosecutor in eliciting same was improper, we cannot agree that it constituted reversible error.

As a general rule, an error in asking a question or in admitting improper testimony may be cured by an instruction to disregard, except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the juror's minds. *Carter v. State*, 614 S.W.2d 821, 824 (Tex.Crim.App.1981). The challenged question and answer invite a variety of inferences, the most prejudicial of which are for the jury to infer that Appellant was either a resident of or was visiting a friend in the halfway house. The former impermissibly implies that Appellant has a prior conviction and the latter invites guilt by association. However, we hold that neither implication is so extreme or inflammatory as to place this testimony in the category of reversible error.

Since we find no reversible error in the proceedings below, we affirm the judgment.