**Daniel William GRUNDSTROM, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–86–00778–CR.

Court of Appeals of Texas, Dallas.

June 10, 1987.

Rehearing Denied July 16, 1987.

921

Melvyn Carson Bruder, Dallas, for appellant.

Michael A. Klein, Asst. Dist. Atty., John Vance, Dist. Atty., Dallas, for appellee.

Before WHITHAM, BAKER and LAGARDE, JJ.

BAKER, Justice.

Daniel William Grundstrom and two co-defendants were charged by indictment for the aggravated robbery of Nancy Reichenstein. This robbery took place in the parking lot of a bar in Dallas called "Confetti's." The jury was given an instruction on law of parties. The State was not permitted to introduce evidence of an extraneous offense committed by the trio, a robbery which occurred earlier the same evening at a restaurant called "On The Border." Appellant was convicted of aggravated robbery and assessed life confinement and a $10,000 fine.

Grundstrom appeals on nine points of error as follows: (1) the evidence is insufficient to support his conviction in that the accomplice testimony was not corroborated, (2) the trial court erred by allowing the State to adduce evidence of an extraneous offense, (3) the trial court erred by admitting into evidence at the trial items seized by the police as a result of an illegal search and seizure, (4) the trial court erred by overruling appellant's objection to the prosecutor's jury argument that an accomplice had testified, "... after we robbed someone at On The Border ..." because that statement was not supported by testimony in the record, (5) the trial court erred by not appropriately instructing the jury to limit its consideration of the extraneous offense admitted into evidence, (6) the trial court erred by not instructing the jury that it should not consider the evidence of the extraneous offense without first finding from the evidence, beyond a reasonable doubt, that the appellant was guilty of such offense, (7) the trial court erred by not instructing the jury that it should not consider the evidence of the extraneous offense without first finding from the evidence, beyond a reasonable doubt, that the appellant was guilty of such offense, after applying the law of parties, (8) the trial court erred by instructing the jury, over the appellant's objection, regarding parole and good time credit, in violation of the separation of powers doctrine and (9) the trial court's instructions regarding parole and good time credit denied the appellant due process of law. Finding no merit in these points of error, we affirm the trial court's judgment.

We first turn our attention to consideration of appellant's point of error number three, wherein the appellant contends the trial court erred by admitting into evidence at the trial items seized by the police as the result of an illegal search and seizure. Prior to trial, appellant sought suppression of all evidence, whether testimonial or physical, relating to or resulting from, his arrest and subsequent search of his property. Following a hearing, this motion to suppress was denied by the trial court. During the course of the trial, the State introduced testimony concerning the appellant's arrest and the search of the vehicle he was driving and also the physical evidence recovered as a result of that search.

At the suppression hearing, the police officer involved with the arrest testified that he had received information of an armed robbery that had occurred at the On The Border restaurant, and that a bluish-gray El Camino vehicle was involved, and the license number was known. Two white females were described as entering the El Camino vehicle driven by an unknown white male. The registered owner of the vehicle was traced by virtue of the license plate number, and it was ascertained that the vehicle had been loaned to the appellant earlier that evening. The actual owner of the El Camino vehicle took the officer to the home address of the appellant and also to several other locations where the appellant might have been found. Being unable to immediately locate the appellant, the officer returned to appellant's residence address where at approximately 2:30 a.m. appellant, accompanied by two white females, drove in the driveway. At this point, the officer involved arrested both women and appellant and searched the vehicle. At the time of the arrest, there were no arrest or search warrants.

Appellant argues that the right of arrest without a warrant is controlled by statute

subject to constitutional constraints. Appellant contends the only applicable statutory exception to the constitutional requirement of a warrant to arrest is found in TEX.CODE CRIM.PROC.ANN. art. 14.04 (Vernon 1977) which permits the arrest of an individual without a warrant if "... a felony has been committed, and the offender is about to escape ..." Appellant takes the position that in order to permit a warrantless arrest, the State is burdened with the responsibility to adduce evidence to show the offender is about to escape and the failure to prove this element of the exception makes the arrest unlawful. Appellant concludes his argument by stating since the arrest was unlawful, then the seizure of the physical evidence from the El Camino vehicle was likewise illegal.

The State contends that there was probable cause for the officer to stop and question the appellant and that the property seized was located in plain view and therefore subject to search and seizure. The State also asserts that the appellant at no time established that he had any expectation of privacy in the area searched. The State also contends that article 14.04, V.A.C.C.P. is not the only statute applicable to a warrantless arrest and points to article 18.16, V.A.C.C.P., and contends that this article is applicable to the case at hand.

■ We disagree with the State's argument that article 18.16 is applicable to this case. While we agree with appellant's general observation regarding authority to make warrantless arrests, we disagree with his contention that the State failed to adduce sufficient evidence to validate the appellant's warrantless arrest under article 14.04, V.A.C.C.P. With respect to the appellant's contention that his warrantless arrest was unauthorized, the question is whether or not the officer had probable cause to make the warrantless arrest of the appellant. The constitutional test for probable cause is whether, at the time of arrest, the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information

were sufficient to warrant a prudent man in believing that a particular person has committed or is committing a crime. *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Lewis v. State,* 598 S.W.2d 280 (Tex.Crim.App.1980).

■ I agree with Justice Lagarde for the reasons stated in her concurring opinion that the warrantless arrest of appellant was lawful by virtue of Article 14.04, TEX. CODE CRIM.PROC.ANN. (Vernon 1977) and that the search of the vehicle incident to arrest was authorized. The search of the vehicle can be further supported, as the Court of Criminal Appeals has acknowledged that an officer should be permitted to take every reasonable precaution to safeguard his life in the process of making an arrest. If, under the totality of the circumstances presented to the officer, he has reasonable grounds to believe that he is in danger of bodily harm or that the person he encounters is armed and dangerous, only then will justification for such a search exist. *Satterwhite v. State,* 726 S.W.2d 81, 87 (Tex.Crim.App.1986); *Lewis v. State,* 502 S.W.2d 699 (Tex.Crim.App. 1973).

In this case, the record reflects that the officer had reasonable grounds to believe that he was in danger of bodily injury and the limited search was conducted solely for his own protection. Officer Lusty testified that he and his partner received information from a patrol officer about a robbery involving two women suspects and a male suspect, the license of the vehicle, the physical descriptions of the two women including the fact that one was armed with a handgun and one with a knife. The license plate of the vehicle matched the report that the officers had received earlier. Officer Lusty testified that they felt their safety was in jeopardy as they approached the vehicle, and that they knew "the suspects were armed and dangerous, and had been taking property from people at gunpoint, and had made several threats to obtain that property." After the occupants got out of the vehicle, one of the women threw down

her purse, exposing a pistol. The officers conducted a search of the vehicle at which time they found credit cards and personal identification belonging to a female on the floorboard of the driver's side of the car. The area searched by the officer was one in which the occupants could have easily reached and obtained a weapon. *Satterwhite*, 726 S.W.2d at 87; *Imhoff v. State*, 494 S.W.2d 919 (Tex.Crim.App.1973). The arrest was lawful, and the officers were authorized to search the interior of the vehicle incident to such arrest. *Chambers v. Maroney*, 399 U.S. 42, 47–52, 90 S.Ct. 1975, 1979–82, 26 L.Ed.2d 419 (1970). Point of error number three is overruled.

Appellant asserts in his first point of error that the evidence is insufficient to support his conviction in that the accomplice testimony was not corroborated. TEX.CODE CRIM.PROC.ANN. art. 38.14 provides:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

■ To test the sufficiency of this corroborating testimony, the reviewing court must eliminate from consideration the evidence of the accomplice witnesses, and then examine the evidence of the other witnesses to see if it tends to connect the defendant with the commission of the offense. *Brooks v. State*, 686 S.W.2d 952 (Tex.Crim.App.1985); *Hardesty v. State*, 656 S.W.2d 73 (Tex.Crim.App.1983). If there is such evidence, the corroboration is sufficient. *Brooks*, 686 S.W.2d at 958; *Hardesty*, 656 S.W.2d at 76. The corroboration need only tend to connect the accused with the offense charged, TEX. CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979); *Warren v. State*, 514 S.W.2d 458 (Tex.Crim.App.1974), and make the accomplice's testimony more likely than not. It is not necessary that the supporting evidence corroborate every aspect of the accomplice's testimony. *Warren v. State*, 514 S.W.2d 458 (Tex.Crim.App.1974); *Sheffield v. State*, 371 S.W.2d 49 (Tex.Crim. App.1962), *cert. denied*, 375 U.S. 833, 84 S.Ct. 34, 11 L.Ed.2d 63 (1963). The corroborative testimony need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Brooks*, 686 S.W.2d 958; *Eckert v. State*, 623 S.W.2d 359 (Tex.Crim.App.1981). All facts and circumstances in evidence may be looked to for corroboration, *Brown v. State*, 672 S.W.2d 487 (Tex.Crim.App.1984); *Worthington v. State*, 714 S.W.2d 461 (Tex. App.—Houston [1st Dist.] 1986, no pet.), and the corroborative evidence may either be circumstantial or direct. *Brown*, 672 S.W.2d at 488.

The trial court instructed the jury that Dana Mason and Lynn Butler were accomplices, and their testimony alone could not sustain a verdict of guilty, but that the jury must find other evidence tending to connect the defendant with the offense committed. The trial court further charged the jury that corroboration is not sufficient if it merely shows the commission of the offense.

■ With the above standards of review in mind, we consider the corroborating evidence offered by the State. The first witness, Francisco Gonzales, testified that he worked at a restaurant called "On The Border." At approximately 9:30 p.m. December 18, 1985, while outside in the restaurant's parking lot, the witness noticed two women "run like crazy." He gave a description that matched one of the women later arrested for the robberies at Confetti's. They ran across the parking lot and got into an El Camino that was "making around to come pick up the ladies." He further testified that a white male was driving the car. Mr. Gonzales reported the license plate number of the El Camino to police shortly thereafter.

Dallas Police officer Dan Lusty testified that at 11:00 p.m. on December 18, 1985, he received the license plate number which had been reported by Mr. Gonzales. He

then ran registration on the plates to determine the car's make and owner. He further testified that he contacted the owner of the vehicle who told police that she had loaned the car to appellant. The owner of the car then showed the police where appellant lived. Appellant was not at home nor was the car there. The owner also showed police a few other places where appellant might be found, but the vehicle was not found there. Police arrived the second time at appellant's residence at approximately 2:30 a.m. on December 19, 1985. Appellant arrived driving the El Camino and accompanied by accomplices Dana Mason and Lynn Butler. The police ordered the three out of the car, whereupon Butler threw down her purse and the gun identified at trial as the one used in the robberies fell out. Officers confiscated several items from the car which were in plain view on the floorboard on the driver's side. Among these items was a ladies' purse which did not belong to Mason or Butler, and several cards, including an identification card bearing the name and picture of one of the victims that was robbed at Confetti's just a couple of hours earlier.

Complainant is one of three women who was robbed at Confetti's on December 19, 1985. She testified that she and two friends went to Confetti's at 12:00 a.m. on the evening of the robberies and stayed approximately 20–30 minutes. She testified that two women whom she identified as Dana Mason and Lynn Butler, placed a gun in her side and a knife by her head, and ordered her to get into the car. The two women then robbed the victims of their purses and the contents as well as some jewelry. The two women then forced them to drive toward a Chinese restaurant where the robbers got out and ran back towards the Chinese restaurant.

There is evidence to corroborate Mason and Butler's testimony that appellant assisted, encouraged, directed or aided them to commit the robberies. To summarize, these corroborating facts were:

1) appellant was loaned the El Camino seen leaving the parking lot of "On The Border" where a robbery occurred;

2) an eyewitness saw an unidentified white male driving the El Camino which had been loaned to appellant—he was accompanied by two white females—the description given one of the females matched one of the women later arrested for the Confetti robberies.

3) appellant was in the presence of the two accomplices just two hours after the Confetti robberies;

4) appellant and the accomplices had joint possession of stolen property some of which belonged to one of the three victims.

■ If a defendant is found in possession of recently stolen property and gives no reasonable explanation showing his honest acquisition of the property, the fact finder may draw a permissible inference of guilt from that possession. *Holt v. State,* 724 S.W.2d 914 (Tex.App.—San Antonio 1987, no pet.); *Hardesty,* 656 S.W.2d at 76. The presence of the accused with an accomplice when coupled with other circumstances, may be considered corroboration of the testimony of the accomplice. *Holt,* 724 S.W.2d at 917; *Nelson v. State,* 542 S.W.2d 175, 177 (Tex.Crim.App.1976). These corroborating facts shown by non-accomplice testimony are sufficient to corroborate the accomplice testimony of Mason and Butler in order to establish appellant's guilt. *See Tolley v. State,* 717 S.W.2d 334 (Tex.Crim. App.1986); *Tucker v. State,* 689 S.W.2d 235 (Tex.App.—El Paso 1985, pet. ref'd). We overrule appellant's first point of error.

■ Appellant's second point of error complains of the trial court's admission of evidence of an extraneous offense. Appellant contends, over his objections, the State was permitted to adduce testimony that three hours prior to the robbery at Confetti which was charged in the indictment, that the two female accomplices committed robberies at the On The Border restaurant and appellant was involved in those robberies. A review of the record reveals that the testimony complained of was elicited as a result of cross-examination by appellant's

counsel. It is well-established that an appellant may not complain of testimony which he himself elicited. *Martinez v. State,* 504 S.W.2d 897, 899 (Tex.Crim.App. 1974); *Dyche v. State,* 490 S.W.2d 568, 569 (Tex.Crim.App.1972); and *Whatley v. State,* 488 S.W.2d 422, 425 (1972). No error is shown, and point of error number two is overruled.

▇▇▇ In point of error number four, appellant complains the trial court erred in overruling appellant's objection to the prosecutor's jury argument that one of the accomplice witnesses had testified, "... after we robbed someone at On The Border ..." because that statement was not supported by testimony in the record. The objection made by appellant at the time of trial was that there was no direct testimony and the prosecutor's argument was outside the record. The point of error asserted by appellant is that the prosecutor's argument was outside the record. However, appellant's argument consists of a complaint that the statement was outside the record or involved an extraneous offense. The argument is multifarious, and, therefore, fails to present error to this court. *Euziere v. State,* 648 S.W.2d 700, 703–704 (Tex.Crim.App.1983); and *Williams v. State,* 605 S.W.2d 596, 599 (Tex.Crim.App.1980).

▇▇▇ However, in viewing the point on its merits, we find that the claim that the statement was outside the record is without support. It appears in the record in response to appellant's counsel's cross-examination of the accomplice witness that she stated, "... after the robbery of On The Border ..." Accordingly, the argument was based upon evidence presented at the trial, and the comment by the prosecutor was a reasonable deduction from that evidence. *Hightower v. State,* 629 S.W.2d 920, 926 (Tex.Crim.App.1981); *Loar v. State,* 627 S.W.2d 399, 401 (Tex.Crim.App. 1981); and *Alejandro v. State,* 493 S.W.2d 230 (Tex.Crim.App.1973). With respect to appellant's contention that the statement

by the prosecutor involved an extraneous offense, no objection as such was made at the trial. Accordingly, that complaint does not correspond with the objection lodged in the trial court. The ground of error must comport with the objection by counsel at trial. Nothing is presented for review. *Watkins v. State,* 572 S.W.2d 339, 343 (Tex.Crim.App.1978). Appellant's point of error number four is overruled.

▇▇▇ In points of error numbered five, six, and seven, appellant complains that the trial court erred in failing to instruct the jury to (1) limit its consideration of the extraneous offense, (2) not consider the evidence of the extraneous offense without first finding from the evidence, beyond a reasonable doubt, that appellant was guilty of such offense, and (3) not consider the evidence of the extraneous offense without first finding from the evidence, beyond a reasonable doubt, that appellant was guilty of such offense, after applying the law of the parties. Appellant agrees that TEX. CODE CRIM.PROC.ANN. art. 36.14 (Vernon 1981) requires a trial court to instruct a jury on the law applicable to the case before the argument of counsel begins, but further states, however, that the court's responsibility to correctly charge the jury extends until the jury's verdict is returned. Although appellant admits that the requested instructions outlined in points of error numbered five, six, and seven were not made until after completion of argument by counsel on the issue of guilt/innocence, his position is that such request for the instructions was not untimely made. Article 36.14, V.A.C.C.P. requires any objections to the charge be made prior to the reading of the charge to the jury. Article 36.15 requires any requested special charges that may be asked for by the parties to be made prior to the time the court reads the charge to the jury. Article 36.16 provides in part that after argument begins no further charge shall be given to the jury unless certain exceptions are present. None of the exceptions set forth in article 36.16 are present here and accordingly, we

hold that the requested instructions were untimely made and, therefore, waived by appellant. *Pendleton v. State,* 434 S.W.2d 694, 696 (Tex.Crim.App.1968); *Villareal v. State,* 429 S.W.2d 508, 510 (Tex.Crim.App. 1986); and *Rojas v. State,* 662 S.W.2d 466, 469 (Tex.App.—Corpus Christi 1983). Appellant's points of error numbered five, six, and seven are overruled.

 In points of error numbered eight and nine, the appellant contends that the trial court erred in instructing the jury regarding parole and good time credit because such instructions violate the separation of powers doctrine, and also denied the appellant due process of law. The contentions raised by appellant in these two points of error have been decided adversely to him by this Court. *See Joslin v. State,* 722 S.W.2d 725 (Tex.App.—Dallas 1986, pet. filed); *Rose v. State,* 724 S.W.2d 832 (Tex.App.—Dallas, 1986, pet. granted). For the reasons stated in *Joslin* and *Rose,* points of error numbered eight and nine are overruled.

The trial court's judgment is affirmed.

LAGARDE, J., concurs with an opinion.

WHITHAM, J., dissents with an opinion.

LAGARDE, Justice, concurring.

I join Justice Baker in much of his opinion in this case and concur in the result reached. However, concerning appellant's first point, in applying the standard of review expressed by Justice Baker, I find the evidence sufficient to corroborate the accomplice witness testimony for slightly different reasons.

I agree with Justice Whitham that neither association of defendant with the two accomplices at the time of arrest, the "On The Border" extraneous offense, nor the fruit of the Confetti's robberies, *standing alone,*[1] is sufficient corroborating evidence;

however, I would hold that the "combined and cumulative" weight of all of these circumstances, examined relative to each other and to other proven facts, is sufficient to provide facts "tending to connect" the appellant with the commission of the offense. *See Edwards v. State,* 427 S.W.2d 629, 632 (Tex.Crim.App.1968).

In applying the test as to sufficiency of corroboration of accomplice witness's testimony, each case must be considered on its own merits. *Holladay v. State,* 709 S.W.2d 194, 200 (Tex.Crim.App.1986); *Walker v. State,* 615 S.W.2d 728, 732, n. 2 (Tex.Crim.App.1981). The phrase "tending to connect" has the ordinary dictionary definition, "to serve, contribute or conduct in *some degree* or way ... to have a more or less direct bearing or effect." *Holladay,* 709 S.W.2d at 198; *Boone v. State,* 235 S.W. 580, 584 (Tex.Crim.App.1922).

Testimony and evidence which "meshes perfectly" with an accomplice witness's testimony makes that testimony more likely than not. *Carillo v. State,* 566 S.W.2d 902, 908 (Tex.Crim.App.1978); *Byers v. State,* 641 S.W.2d 629, 634 (Tex.App.—Tyler 1982, no pet.). The State need only "strengthen [accomplice] testimony by proof of *connected incidents* tending to show its reasonableness and consistency." *Holladay,* 709 S.W.2d at 200.

The record in this case shows that Dana Mason and Lynn Butler were accomplices with the appellant during the commission of this offense. At about 11:00 on the morning of December 18, 1985, Butler went to appellant's house. During that morning they talked about robberies in general and the appellant told her about "some stuff in his background." Appellant borrowed an El Camino from Jane Moses. Appellant and Butler then went to the house of a friend of appellant's and appellant got a gun and gave it to Butler. Butler put the gun in her purse. At about 6:30 or 7:00 p.m. that same day appellant and Butler picked up Mason. They went to eat, following which they returned to appellant's

---

1. Unless otherwise indicated emphasis is supplied by the writer.

house and stayed about an hour. Appellant gave Mason a knife. The three continued to talk about committing robberies. Mason was a heroin addict. Her boyfriend was in jail and she needed money. They drove to Harry Hines and Hondo to "make some money." They drove by an adult bookstore to see a man. He was not there. They stopped and bought some cigarettes. They then returned to Oak Cliff to buy some heroin. They drove back to a bar on Greenville. The bar was closed. They drove by several bars and restaurants and for various reasons chose not to commit robberies at those establishments.

Appellant told the accomplices how to rob victims. He instructed them to look straight at their victims, to not appear nervous, and to "wish them a Merry Christmas." Butler testified that appellant "made it sound so easy." During their discussions of how to go about committing the robberies, they discussed the strategy of appellant sitting in the car and parking somewhere and the two women walking through the parking lot and robbing people as they came out of clubs and restaurants. One of the restaurants they went to was "On The Border". After leaving "On The Border" they drove back to Oak Cliff and got some more heroin. They then drove by a bail bonding company on Industrial. The three then drove through European Crossroads. They then drove through the parking lot of Old Town Village.

At some time shortly after midnight the trio drove by Confetti's and saw three "well dressed" females who "looked like they had money" coming out of the club. The appellant parked the El Camino at the side of a restaurant next door to Confetti's. Butler, by exhibiting the gun, forced the three females into a BMW belonging to one of the victims. Mason got into the back seat with one of the victims. Butler got into the front seat with the other two victims. The accomplices took the victims' purses and their contents and some jewelry and forced the driver to drive to the restaurant where the appellant was waiting. Appellant and the accomplices divided the money obtained during the robbery. Appellant and Butler threw the stolen purses in a dumpster near a bar on Lemmon Avenue. They then returned to Oak Cliff to buy some more heroin. They then drove to appellant's house, arriving there about 2:30 a.m. December 19, 1985.

Immediately after stopping the El Camino in the driveway, they were approached by the police. The police had previously received information of an armed robbery that had occurred at "On The Border" and that a bluish-gray El Camino, driven by an unidentified male and occupied by two unidentified white females, was involved. The police had also received the license number of the El Camino involved in the robbery and that license number matched the license number of the El Camino driven by appellant. Butler got out of the car first. The police identified themselves. At this time Butler threw down her purse. The purse was open and the police officer saw a pistol laying on top of the contents of her purse. The police ordered appellant and Mason out of the car. The three persons were arrested and searched. A knife, located inside her boot, was recovered from Mason. Incident to the arrest, certain personal property and identification cards and a purse, not owned by Butler or Mason, were recovered from inside the El Camino. Among the recovered items was an Ursuline Academy I.D. card bearing the name Amy Pierce and a photograph of a female, a wallet, some credit cards and jewelry belonging to Amy Pierce. These items were in plain view on the floorboard on the driver's side. The day following the robbery these items were returned to Amy Pierce. The Ursuline I.D. card was admitted into evidence before the jury at trial.

I now consider only the non-accomplice witness evidence. Francisco Gonzales worked at a restaurant called "On The Border." At about 9:30 p.m. on the night of December 18, 1985, he was outside in the parking lot behind the restaurant. He saw an unidentified white male sitting in an

El Camino at the back of "On The Border" with the "lights off and everything else running." He also saw two white females "run like crazy" and get in the El Camino. The El Camino, driven by a white male and occupied by the two women, pulled out into the street and, at that time, turned on its lights. The eyewitness thought that the circumstances were "suspicious" and got the license number of the El Camino and gave it to the police.

Dan Lusty, a Dallas Police officer, testified that around 11:00 on the night of the robbery he received from Francisco Gonzales certain information, including a license plate number. He ran the number on the computer. He learned that the car was registered to a woman named Jane Moses. Lusty went to Moses' home and learned that the woman did not have the car. She had loaned it to appellant. The woman then took the officer to appellant's residence. Appellant was not at home. Moses then showed the officer some other bars where appellant might be but the officer did not find appellant. Lusty then took Moses back to her home and returned to appellant's residence in Oak Cliff.

At about 12:00 midnight on December 18, 1985, Nancy Reichenstein went to Confetti's with two of her friends, Barbara Marshall and Amy Pierce. They stayed at the bar for about twenty to thirty minutes. As they were leaving the bar, Reichenstein and her friends were approached by Mason and Butler. Mason put a knife by her head and Butler placed a gun in her side. Butler had on a red jacket. Reichenstein was told to get into her BMW and that they "were going for a ride." Mason got into the back seat and Butler got into the front seat. The two accomplices then took the purses and all of their contents from the three victims. The two accomplices forced the driver to drive to a nearby restaurant.

At about 2:30 a.m. on the morning of December 19, 1985, as Officer Lusty approached appellant's home, he saw an El Camino, with a license plate bearing the same license number he had been given earlier by Gonzales, drive into the driveway. Appellant was driving the El Camino and Butler and Mason were passengers. Butler got out first. The police identified themselves and ordered the other two persons out of the car. Butler threw down her purse; the purse opened and exposed a pistol laying on top of the contents. The three persons were arrested and searched. A knife, found inside her boot, was taken from Mason. Officer Lusty looked inside the automobile and observed, in plain view on the floorboard on the driver's side, personal papers and identification cards belonging to Amanda (sic) Pierce. The officer also found a purse, not belonging to Butler or Mason, in the automobile. The day following the robbery Amy Pierce went to the police station and claimed as her property some of the items recovered from the floorboard of the El Camino. The Ursuline I.D. card, bearing the name of Amy Pierce and a photograph of a female, was admitted into evidence before the jury. Although Amy Pierce did not testify, she was brought into the courtroom, in the presence and view of the jury, and identified by Reichenstein.

To summarize, the non-accomplice testimony establishes: (1) appellant was loaned an El Camino by a woman named Jane Moses; (2) that same El Camino was seen at "On The Border" at 9:30 p.m. on December 18, 1985, parked at the back of the restaurant on the parking lot with "lights off and everything else running;" (3) two women wearing blue jeans and jackets, "run like crazy" from "On The Border" and get in the El Camino; (4) the El Camino, driven by a white male and occupied by the two women, then pulls out of the parking lot onto the street and at that time the lights go on; (5) at approximately 12:30 a.m. the morning of December 19, 1985, two women identified as Lynn Butler and Dana Mason, wearing blue jeans and jackets, exhibited a gun and a knife, respectively, and robbed Nancy Reichenstein, Barbara Marshall and Amy Pierce outside Confetti's; (6) the two accomplices forced their victims to take them to an area where

there existed no apparent means of transportation for fleeing; (7) at 2:30 a.m. that morning the police arrested appellant in the company of the two accomplices as they exited the same El Camino; (8) Amy Pierce was a victim of the Confetti robbery, and during that robbery her purse and its contents were stolen; (9) an Ursuline Academy I.D. card, bearing the name Amy Pierce and a photograph of a female, was in plain view on the driver's side of the El Camino which was driven by appellant immediately prior to his arrest; (10) during the course of the trial Amy Pierce and Barbara Marshall were brought into the courtroom and identified by Reichenstein; (11) the identification card bearing the name of Amy Pierce and a photograph of a female was admitted into evidence; (12) the jury was able to compare the photograph on the I.D. card with the appearance of the person who was brought into the courtroom and identified as Amy Pierce in order to determine that it was the same Amy Pierce; (13) Amy Pierce went to the police station the day following the robbery and claimed as her property certain items recovered from the floorboard of the El Camino at the time of arrest.

The appellant maintains that there is no evidence of probative value proving that the property found in the El Camino belonged to any victim of the robbery or that the property found was "fruits of the robbery." At oral argument appellant urged that the photograph on the I.D. card would not "tend to connect" because Amy did not testify. It is true that Amy Pierce did not testify; however, during the course of the trial she was brought into the courtroom, in the presence and view of the jury, and was identified by Reichenstein. The jury at that time had an opportunity to see her in person and compare her appearance to the photograph that was on the I.D. card. I agree with the appellant that there is no *direct evidence* in the record showing that the I.D. card and the property recovered on the occasion was *stolen* during the rob-

bery; however, there is strong circumstantial evidence that the property was "fruit of the robbery." I disagree with Justice Baker that the unexplained possession of recently stolen property rule can be applied, under the facts of this case, to infer that the property was *stolen*. The dissent argues that since appellant was not the primary actor, but simply a party, the inference that one in unexplained possession of recently stolen property was a *thief* does not apply. *See Morrison v. State*, 608 S.W.2d 233, 235 (Tex.Crim.App.1980). It is noted, however, that in *Morrison* the inference was not sought to be used to "tend to connect" but rather to prove defendant's guilt as a party. Aside from the limitation announced in *Morrison*, however, it is my belief that the rule would not apply under the facts of this case. There is no *direct evidence* that the recovered property was "fruit of the robbery."

Before the unexplained possession of recently stolen property rule may be applied, the State must first establish all of the elements of the rule. One of the elements of the rule is that the property is *stolen* property. There is no *direct non-accomplice* testimony [2] that the property was "fruit of the robbery." To apply the rule under the facts of this case would be to use the resulting inference to establish a factual element of the rule from which the inference arises. I, therefore, agree with the dissent that reliance on such rule is misplaced. Even though there is no *direct evidence* that the property recovered was "fruit of the robbery," there is very strong *circumstantial evidence* that the property found was *stolen* property. There is direct testimony that the purse of Amy Pierce and its contents were taken. The Ursuline I.D. card is consistent, both in size and type, with items traditionally carried by a female in her purse. Even though the property was not shown by direct evidence to be "fruit of the robbery" there is direct evidence that it was property belonging to Amy Pierce and that the same Amy Pierce

---

2. There is, of course, direct accomplice witness testimony that the property is stolen property.

was a victim of the robbery. Amy Pierce claimed as her property certain of the items the day following the robbery. Therefore, I conclude that the joint possession by appellant of this property is a circumstance properly to be considered in determining the "combined and cumulative" weight of the corroborating evidence, together with other facts and circumstances, to determine sufficiency of facts "tending to connect" the accused with the commission of the crime. *See Cherb v. State,* 472 S.W.2d 273, 280–81 (Tex.Crim.App.1971) (possession of coins not identified by non-accomplice testimony as "fruit of the crime" properly considered as a circumstance in evaluating sufficiency of corroborative evidence).

Appellant argues that hearsay testimony linking the El Camino to appellant and establishing the recovered property as belonging to one of the robbery victims has no probative value. He relies on *Ex parte Hebert,* 579 S.W.2d 486 (Tex.Crim.App. 1979) and *Maden v. State,* 542 S.W.2d 189 (Tex.Crim.App.1976). The record reflects that no objection, based on hearsay grounds, was lodged at trial to the admission of such testimony.

In *Chambers v. State,* 711 S.W.2d 240, 247 (Tex.Crim.App.1986), the Court of Criminal Appeals held that "inadmissible hearsay admitted without objection is to be treated the same as other evidence in a sufficiency context and is capable of sustaining a verdict." Surely it would, likewise, be capable of "tending to connect."

The corroboration need not *directly link* the accused to a crime or be sufficient in itself to establish guilt. *Walker v. State,* 615 S.W.2d at 732; *Lyman v. State,* 540 S.W.2d 711, 714 (Tex.Crim.App.1976). Also, timing of the events may in particular cases "tie in" a defendant with the commission of the offense. *Byers v. State,* 641 S.W.2d at 634.

The Court of Criminal Appeals, in *Minor v. State,* 108 Tex.Crim.R. 1, 299 S.W. 422, 428 (1927), cited by the court in *Edwards v. State,* 427 S.W.2d 629, 632 (Tex.Crim.App. 1968) stated:

The law forbidding a conviction upon the uncorroborated testimony of an accomplice does not demand that there be direct evidence pointing to the accused as the offender but merely requires that there be 'other evidence tending to connect the defendant with the offense committed.' ... Circumstances proved by credible witnesses may be as potent as direct testimony intending to connect the accused with the commission of the offense. The State is not called upon to point to some single or isolated fact which, in itself, *unrelated to other proven facts,* will be sufficient corroboration. It is the *combined and cumulative weight* of the evidence furnished by non-accomplice witnesses which supply the test. *If by this rule it appears on appeal that before the jury there was proof* confirming the testimony of the accomplice to material facts tending to connect the accused with the commission of the offense, the law is satisfied.

(Citations omitted).

Viewing the evidence in the light most favorable to the jury's verdict, as this court is required to do, and applying the standards discussed above, I conclude that the evidence independent of the accomplice witnesses "meshes perfectly," both in timing and content, with the accomplice witness testimony. Thus, it tends to show its reasonableness and consistency and thereby "to some degree" strengthens it. Admittedly, each of the circumstances discussed, standing alone, would not be sufficient to support the conviction. However, I conclude that the "combined and cumulative weight" of all of these circumstances is sufficient to provide facts "tending to connect" the accused with the commission of the crime. Thus, the evidence is sufficient to corroborate the testimony of the accomplice.

In point of error number three, appellant contends that the trial court erred by admitting into evidence at the trial items seized by the police as the result of an illegal search and seizure. I conclude that,

under the facts of this case, the warrantless arrest was lawful and the search and seizure, incident thereto, was likewise lawful. I do so, however, for different reasons than does Justice Baker.

Appellant contends the warrantless arrest was not authorized under TEX.CODE CRIM.PROC.ANN. art. 14.04 (Vernon 1977) which provides:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

Appellant argues that in order to bring a warrantless arrest within the ambit of article 14.04, a showing by the State that the offender is about to escape is indispensable. He relies on *Pearson v. State*, 657 S.W.2d 120 (Tex.Crim.App.1983); *Randall v. State*, 656 S.W.2d 487, 490 (Tex.Crim. App.1983); *Hogan v. State*, 631 S.W.2d 159 (Tex.Crim.App.1982); *Hardison v. State*, 597 S.W.2d 355 (Tex.Crim.App.1980); *Honeycutt v. State*, 499 S.W.2d 662 (Tex. Crim.App.1973); *Truitt v. State*, 505 S.W.2d 594 (Tex.Crim.App.1974) and *Rippy v. State*, 53 S.W.2d 619 (Tex.Crim.App. 1931).

The State argues that the arrest and subsequent search and seizure were lawful because: (1) appellant had no expectation of privacy in the vehicle because it was a "borrowed" vehicle and appellant only had "possession" of the vehicle; consequently, appellant had no standing to complain; relying on *United States v. Salvucci*, 448 U.S. 83, 92, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980); *Rawlings v. Kentucky*, 448 U.S. 98, 104–105 (1980) and *Wilson v. State*, 692 S.W.2d 661 (Tex.Crim.App.1984); (2) the officers had within their knowledge

sufficient information to justify the initial stop of appellant; relying on *Esco v. State*, 668 S.W.2d 358, 360 (Tex.Crim.App.1982) and *Myre v. State*, 545 S.W.2d 820, 825–26 (Tex.Crim.App.1977); (3) the seizure was lawful as a confiscation of stolen property that was located in plain view, relying on *Myre, supra*, and TEX. CODE CRIM. PROC.ANN. art. 18.16 (Vernon 1977).[3]

The record reflects that at the Motion to Suppress hearing, the arresting officer testified that: (1) at about 11:00 p.m. he received information from a patrol officer that a robbery had occurred; (2) a bluish-gray two-toned El Camino vehicle was involved; (3) he was given the license number of the vehicle; (4) an unidentified white male was driving the vehicle; (5) two unidentified women in their early to mid-twenties were involved; both women were about 5'2" to 5'4" and one had light brown hair, the other dark brown hair. One was wearing a blue ski jacket, the other a red cloth-type jacket; (6) the women were armed with a handgun and a knife; and (7) the two women were seen getting into the El Camino vehicle driven by the unidentified white male.

Upon receipt of the above information, the officer testified that: (1) he ran the license number on the computer and determined the owner of the vehicle to be Jane Moses; (2) he personally contacted the owner; (3) the owner told the officer that she had loaned her vehicle to the appellant; (4) the owner took the officer to appellant's residence; (5) appellant was not home and they waited a little white for him to return and then left; (6) they continued, unsuccessfully, to look for appellant at various places at which he was known to hang out; (7) they returned to appellant's residence between 2:00 a.m. and 2:30 a.m.; (8) as they arrived the El Camino was pulling into the driveway; (9) the officers, in an unmarked

---

3. Article 18.16 provides

All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or

delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay.

police car, pulled in right behind the El Camino; (10) the license number and description of the vehicle matched the information previously given to the officer; (11) one woman got out of the vehicle; (12) the police identified themselves; (13) the woman outside the vehicle threw down her purse; the purse was open and a pistol was laying on top of the contents of the purse; (14) the remaining occupants, upon being ordered out of the vehicle by the police, exited the vehicle; (15) the doors of the vehicle remained open; (16) the officers looked inside the car and, in plain view, saw credit cards and personal identification cards on the floorboard on the driver's side; (17) all suspects were searched and a knife was recovered from inside the boot of the second female.

The officer specifically testified that it was *"after I saw the pistol, and saw the suspects,* and from the detailed clothing description that we had gotten from the witnesses, *then we felt that we probably had the suspects there, and they were detained by us."*

In *West v. State,* 720 S.W.2d 511, (Tex. Crim.App.1986), the Court of Criminal Appeals recently held:

We hold that where, as in the instant case, officers who reasonably believe that further investigation of an offense may be necessary in order to justify the issuance of a warrant, and where those officers undertake that investigation lawfully and without impinging upon reasonable expectations of privacy, and where that investigation leads to the receipt of information which in combination with their other information constitutes probable cause to arrest the suspect, but that information is obtained in the presence of the suspect under circumstances which would lead the officers reasonably to believe that the suspect would take flight if given the opportunity to do so, the officers are authorized by Art. 14 to arrest the suspect without first procuring a warrant.

Under the facts of this case, the evidence reflects that while the officers may have had good cause to suspect that the appellant and the two female accomplices were indeed the robbers he sought, it was by no means a certainty. At this point the officer only had information that the car had been loaned to appellant; he had no specific physical description of the driver, by which he could identify appellant as the driver of the car seen leaving On The Border, beyond the fact that the driver was an unidentified white male. Here, as in *West,* the officers' attempt to confirm their suspicion that the driver of the car at On The Border was the appellant, to whom the car had been loaned, or to turn their attention immediately to the fresh trail of a recently committed crime rather than to let that trail grow stale while seeking a warrant for unnamed persons fitting the suspects' descriptions was, in my opinion, reasonable and constituted good police work. While continuing his investigation, it was not until Officer Lusty "saw the pistol, and saw the two women, and from the detailed clothing description that [he] had gotten from the witnesses," that he felt confident that he had sufficient probable cause to arrest appellant. He had determined, first-hand, that appellant was indeed the driver of the car seen leaving On The Border. At this point, the officer took what seems to me to be a reasonable course. Having acquired additional information which, in combination with other known information, constituted probable cause to arrest, and that information having been obtained in the presence of the appellant under circumstances which would lead the officers reasonably to believe that the appellant would take flight if given the opportunity to do so, the officers arrested the appellant and his accomplices without first procuring a warrant. In light of the time frame involved, the questionable adequacy of the information concerning appellant's involvement in the robbery at On The Border, and the activity undertaken by the officer in the interim period, in my opinion, the officer took a reasonable and prudent course of action. I conclude, therefore, that the arrest of appellant, without a warrant, un-

der the facts of this case, was lawful. *See West v. State*, 720 S.W.2d at 518.

The arrest having been held lawful, it follows that the officers were then authorized to search the interior of the vehicle incident to such arrest. *Chambers v. Maroney*, 399 U.S. 42, 47–52, 90 S.Ct. 1975, 1979–82, 26 L.Ed.2d 419 (1970). Having held the arrest lawful, under article 14.04, I do not reach the other contentions advanced by the State.

As to appellant's remaining points of error, I concur with Justice Baker as to their disposition. Consequently, I would affirm.

WHITHAM, Justice, dissenting.

I respectfully dissent. In his first point of error, appellant contends that the evidence is insufficient to support appellant's conviction in that the accomplice testimony was not corroborated. I agree. Therefore, I would sustain appellant's first point of error, reverse the trial court's judgment and render a judgment of acquittal.

Butler and Mason were accomplice witnesses as a matter of law. The trial court so instructed the jury. I accept the majority's standards of review. Thus, I reach consideration of the State's non-accomplice evidence to evaluate the sufficiency of that evidence to corroborate the testimony of Butler and Mason.

*The presence of the appellant in the company of Butler and Mason at arrest*

I cannot agree that appellant's presence in the company of Butler and Mason at the time of their arrest, more than two hours after the robbery and many miles from the scene, is sufficiently corroborative of their testimony. To my mind, the facts and disposition in *Meyers v. State*, 626 S.W.2d 778 (Tex.Crim.App.1982), are instructive. In *Meyers*, as here, appellant was not identified by a non-accomplice as being at the scene of the crime nor was the vehicle in which the robbers got away identified. *Meyers* was an appeal from a conviction of aggravated robbery. In his sole point of error, Meyers contended that the evidence was insufficient to corroborate the testimony of an accomplice witness. Marlow was an accomplice witness as a matter of law. The trial court so instructed the jury. On July 16, 1978, Marlow, Meyers and others registered at a motel in Waco under the name of Richard Davis. The next day, Marlow, Meyers and others drove to Meridian. A witness placed Meyers and Marlow outside the Circle Cafe in Meridian at about noon. That same witness again saw Meyers and Marlow at a highway intersection in Meridian about 12:30 p.m. That intersection was a few blocks from the See Right Drugstore in Meridian, the scene of the offense. On both occasions Marlow was driving and Meyers was seated in the front passenger seat. Shortly before 1:00 p.m., three men entered the See Right Drugstore and robbed three women working in the drugstore. One of the victims identified Marlow as the man with the knife. None of the victims identified Meyers or the third man. (Meyers and the third man had bandanna maska covering their faces. Marlow, who had a bandanna, forgot to cover his face.) None of the victims saw the robbers' vehicle. After the robbery, the three men abandoned the vehicle used in the robbery about three miles out of Meridian. The three men then changed vehicles and, with a woman companion, drove toward Hillsboro, to Waco and then to Houston. The three men were later arrested in Houston. The Texas Ranger who arrested Meyers testified that Meyers was originally arrested under the name of Richard Davis and that, at the time of his arrest, Meyers had with him a driver's license bearing the name of Richard Davis. The desk clerk at the Waco motel testified that her records showed that, on July 16, 1978, a man and three other adults registered for a single room for the night and that the man signed the register as Richard Davis. The clerk did not identify Meyers or Marlow. Shortly after the robbery, the sheriff found the vehicle used in the robbery and found items taken in the robbery in that vehicle.

In *Meyers,* the court held that the evidence was insufficient to tend to connect the appellant with the commission of the crime, reversed and ordered the accused acquitted. *Meyers,* 626 S.W.2d at 781. In reaching this holding, the court in *Meyers* stated the rule applicable to the present case. The mere presence of the accused in the company of the accomplice shortly before or after the commission of the offense is not, in itself, sufficient corroboration. *Meyers,* 626 S.W.2d at 780. In *Meyers,* the court went on to explain:

> Although this testimony placed the appellant near the drugstore shortly before the time of the offense, as noted above mere presence of the accused in the company of the accomplice shortly before or after the time of the offense is not, in itself, sufficient corroboration of the testimony of the accomplice. Furthermore, although the testimony of Sheriff Roberts established the presence of items from the drugstore in the Mustang, there was no testimony, other than that of the accomplice, to link the appellant to the robbery.

*Meyers,* 626 S.W.2d at 781. While the facts in *Meyers* and the present case are similar, the facts in the present case are more favorable to appellant than they were to the accused in *Meyers.* In *Meyers,* the evidence placed the accused a few blocks from the scene of the crime thirty minutes before the offense. In the present case no non-accomplice evidence places the appellant near the scene of the crime at anytime. Consequently, applying the rule stated in *Meyers* to the facts of the present case, I would hold that the mere presence of appellant in the company of Butler and Mason after the time of the offense is not, in itself, sufficient corroboration of the accomplice testimony of Butler and Mason.

In this connection, I recognize that proof that the accused was at or near the scene of the crime at or about the time of its commission, when combined with suspicious circumstances such as unreasonableness of the hour, lack of apparent reason for such presence, being in the company of an accomplice and subsequent flight, furnishes sufficient corroboration of an accomplice witness to support a conviction. *Killough v. State,* 718 S.W.2d 708, 711 (Tex. Crim.App.1986); *Passmore v. State,* 617 S.W.2d 682, 685 (Tex.Crim.App.1981). However, none of these facts exist in the present case. Not even flight. Appellant was arrested as he arrived home. Thus, there is no evidence of flight, but only evidence that appellant was not at home when the police arrived and that appellant was arrested by waiting police officers when he returned home. *See Castaneda v. State,* 682 S.W.2d 535, 538 (Tex.Crim.App. 1984). Therefore, the presence of appellant with Butler and Mason fails to corroborate the accomplice testimony.

### The "On The Border" extraneous offense

Evidence of extraneous offenses can be corroborative of accomplice testimony, but not where the accused is not connected to such offenses. *Cruz v. State,* 690 S.W.2d 246, 251 (Tex.Crim.App.1985); *Walker v. State,* 615 S.W.2d 728, 733 (Tex.Crim.App. 1981). Butler and Mason admitted committing robberies at On The Border, and implicated appellant in these robberies as the driver of the El Camino in which they escaped. The only evidence, other than the accomplice testimony, relating to the On The Border robberies is the testimony of Francisco Gonzales that he saw two girls "run like crazy" across the parking lot, and then get into an El Camino driven by a white male whom he could not identify. He got "the license plates for the vehicle" which he reported to the police. Since Gonzales never identified the "license plates" or the El Camino he saw that night, this testimony establishes no connection between appellant and the On The Border robberies except circumstantially through the hearsay testimony of Dallas police officer Dan Lusty that he "receive[d] information regarding a license plate" which, through other hearsay evidence, he traced

to appellant. Evidence that someone lent the El Camino to appellant is not evidence that appellant was in the El Camino at On The Border. But even if this evidence were sufficient to show that appellant was in the El Camino at On The Border, I observe that evidence which verifies extraneous matters without tending to connect the accused to the actual crime charged is insufficient. *Walker v. State*, 615 S.W.2d at 733. Even though evidence of another crime may be relevant to the instant proceeding, such evidence should not be admitted unless the commission of the other crime is "clearly proved" and the accused is shown to have been its perpetrator. *Eanes v. State*, 546 S.W.2d 312, 314–15 (Tex.Crim.App.1977). There is no evidence, except the admissions of the accomplices, connecting appellant to the On The Border robberies. Thus, the State failed to clearly prove the commission of another crime and the accused as its perpetrator. *See Eanes v. State*, 546 S.W.2d at 314–15. Hence, there being no connection between the On The Border robberies and appellant's presence at On The Border, the On The Border extraneous offense fails to corroborate the accomplice testimony to establish appellant's guilt of the offense charged in the indictment. *Walker v. State*, 615 S.W.2d at 733.

### The fruit of the Confetti's robberies

The majority writes that appellant was found in possession of recently stolen property taken in the Confetti's robberies. Appellant maintains that there is no evidence of probative value proving that this property belonged to any victim of the robberies. The majority fails to address appellant's challenge to the evidence. Nevertheless, in concluding that the property in question corroborates the testimony of Butler and Mason, the majority relies on the rule that if a defendant is found in possession of recently stolen property and at the time of arrest fails to make a reasonable explana-

tion showing his honest acquisition of the property, the factfinder may draw an inference of guilt. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex.Crim.App.1983). In *Hardesty*, the court reminds us that the deduction drawn from a defendant's recent and unexplained possession of stolen property should be termed a permissible inference and not a presumption, as the inference has often been labeled. *Hardesty*, 656 S.W.2d at 76–77. The distinction is as follows. A true presumption is a rule of law laid down by the courts which attaches to facts certain procedural consequences, such as the shift in the burden of evidence production. *Hardesty*, 656 S.W.2d at 76. A permissible inference is a deduction from the facts which the factfinder may, but is not obligated to, draw from the circumstances of the case without the aid of any rule of law. *Hardesty*, 656 S.W.2d at 76.

With that explanation of terminology made, I express my view that the majority erroneously applies the permissible inference (or presumption) rule upon which it relies. The rule does not apply because appellant was convicted as a party. Since appellant was not the primary actor, the presumption that one in unexplained possession of recently stolen property was the *thief* does not apply. *Morrison v. State*, 608 S.W.2d 233, 235 (Tex.Crim.App.1980). Or to restate the language of *Morrison* in light of *Hardesty's* teaching: Since appellant was not the primary actor, the inference that one in unexplained possession of recently stolen property was the *thief* cannot be drawn. Thus, under *Morrison*, an inference of guilt cannot be drawn in the present case. Absent this inference, appellant has not been found in possession of recently stolen property. Consequently, there is no possession by appellant of stolen property to serve as evidence corroborating accomplice testimony. Hence, the possession of the "stolen guns" circumstance relied upon in *Tolley v. State*, 717 S.W.2d 334, 336 (Tex.Crim.App.1986), to distinguish *Meyers* has no bearing in the

present case.[1] It follows that the property in question could not corroborate the testimony of Butler and Mason.

### Disposition

For the above reasons, I would hold that none of the non-accomplice evidence corroborates the accomplice testimony of Butler and Mason as required in order to establish appellant's guilt. It follows, and I would further hold, that the evidence is insufficient to sustain appellant's conviction. I would so hold because, in my view, the accomplice testimony was not corroborated. Consequently, I would sustain appellant's first point of error and reverse the trial court's judgment. Under *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2151, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978), a reversal based on insufficient evidence operates to acquit the defendant of the offense for which he is tried. *Windham v. State*, 638 S.W.2d 486, 487–88 (Tex.Crim.App.1982). In the present case, the evidence is not sufficient to support the allegations in the indictment. *See Windham*, 638 S.W.2d at 487–88. Thus, under the evidence, the only verdict the jury properly could have returned was an acquittal. *Windham*, 638 S.W.2d at 488. Therefore, I would render a judgment of acquittal.

---

1. In my earlier recitation of facts taken from *Meyers*, I state "[s]hortly after the robbery, the sheriff found the vehicle used in the robbery and found items taken in the robbery in that vehicle." In view of that statement, I respectfully suggest that in *Tolley* the Court of Criminal Appeals misreads its prior opinion in *Meyers* as to stolen items found in the vehicle used in the robbery. In *Tolley*, the court states "[i]n *Meyers*, the items in the car were not shown to have been stolen. 626 S.W.2d at 781." *Tolley*, 717 S.W.2d at 336. I quote *Meyers*:

 Shortly after the robbery, Sheriff Roberts found the Mustang near a dirt road. It had been "hot-wired" and was still running. Inside he discovered blood on the floorboard and on the gearshift. *He also found a cigar box which had come from inside the safe at the drugstore, and parts of the instruction sheets from some of the drugs which were taken in the robbery.* In addition the sheriff found a knife on the floor of the Mustang which had blood on it. Laboratory analysis showed that the blood was type O, the same type as the blood on the floor and gearshift of the car.

 *Meyers*, 626 S.W.2d at 780 (emphasis added). And finally the testimony of Sheriff Roberts was that he discovered some *items taken from the drugstore* in the Mustang.

 * * * * * *

 Furthermore, although *the testimony of Sheriff Roberts established the presence of items from the drugstore in the Mustang,* there was no testimony, other than that of the accomplice, to link the appellant with the robbery. *Meyers*, 626 S.W.2d at 781 (emphasis added). Thus, I read *Meyers* to say that the items in the car *were* shown to have been stolen.